**UNITED STATES of America, Plaintiff,**

v.

**Gordon Scott DUNCAN, Defendant.**

**No. G84–4 CR.**

United States District Court,
W.D. Michigan, S.D.

May 9, 1984.

Thomas Gezon, Asst. U.S. Atty., Grand Rapids, Mich., for plaintiff.

James Bearinger, Traverse City, Mich., for defendant.

## OPINION

BENJAMIN F. GIBSON, District Judge.

Defendant in this criminal case is charged with distribution of cocaine, possession of cocaine with intent to distribute, possession of marijuana with intent to distribute, possession of cocaine, and conspiracy to possess and distribute cocaine and marijuana with intent to distribute. Now

before the Court are motions by defendant to dismiss the indictment for preindictment delay, to suppress certain evidence obtained through allegedly invalid searches, and to obtain discovery.

The charges in the five-count indictment stem from defendant's alleged delivery of drugs to an undercover informant in June of 1981 and his subsequent arrest. Although defendant was not arrested at the time of the alleged delivery of drugs to the informant, an arrest warrant was issued and defendant was stopped and arrested by deputies of the Benzie County Sheriff's Department on July 21, 1981. At the time of his arrest, defendant was driving his automobile accompanied by a passenger whom the officers also took into custody pursuant to an outstanding arrest warrant.

Since there was nobody present to take charge of the vehicle in which defendant and his companion were riding at the time of their arrest, the sheriff's deputies called a tow-truck to remove the vehicle and began to inventory the contents of the vehicle. During this inventory search, one of the arresting officers opened the trunk of the automobile and discovered a large plastic bag. Because he detected the aroma of marijuana in the trunk, the officer did not open the bag at that time, but completed his inventory search and had the vehicle towed to a county facility.

Defendant was present at the scene during the inventory of the vehicle's contents and was later taken to the county jail along with his companion. At the jail, defendant was searched prior to being placed in a cell and a packet of suspected drugs was found on his person. The following morning a warrant was obtained to search the automobile and any containers found in the vehicle for suspected drugs based on the arresting officer's observations during the inventory search, the presence of drugs on the person of defendant at his arrest, and information conveyed to the officer seeking the warrant by another officer who had obtained a tip from a confidential informant.

The search of the automobile disclosed a quantity of suspected marijuana and cocaine. Based on these events, defendant was charged with violations of state law and his case proceeded in state court. In the course of the state court prosecution, defendant filed several motions including a motion to dismiss based on denial of his right to a speedy trial. The state prosecutor never responded to this motion. Instead, the prosecutor appeared on the date the motion was to be heard and moved to dismiss the state court proceedings to permit the federal authorities to prosecute defendant for the same acts. The prosecutor's motion was granted on July 18, 1983 and almost six months later, in January, 1984, the indictment which is the subject of these proceedings was returned by the grand jury. Subsequent to his arraignment on the indictment, defendant brought the present motions.

## MOTION TO DISMISS THE INDICTMENT

■ Defendant asks the Court to dismiss the federal indictment relying on the Due Process Clause of the Fifth Amendment and Fed.R.Crim.P. 48(b) claiming that he has been prejudiced by "prosecutorial gamesmanship" and the delay between the date on which the criminal acts were alleged to have occurred and the federal indictment on the charges arising out of those acts. Defendant does not claim that he has been denied a speedy trial in this court. Generally, speedy trial considerations do not apply to the period before a defendant is indicted, arrested or otherwise officially accused. *United States v. MacDonald*, 456 U.S. 1, 102 S.Ct. 1497, 1501, 71 L.Ed.2d 696 (1982). However, "delay prior to arrest or indictment may give rise to a due process claim under the Fifth Amendment." *Id.* (citing *United States v. Lovasco*, 431 U.S. 783, 97 S.Ct. 2044, 52 L.Ed.2d 752 (1977)). Therefore, the Court must determine whether the delay in bringing the indictment and the conduct of the prosecution in this case have deprived defendant of due process of law.

■ There is no *per se* standard for determining when preindictment delay amounts to denial of due process. However, it is "clear that proof of prejudice is generally a necessary but not sufficient element of a due process claim, and that the due process inquiry must consider the reasons for the delay as well as the prejudice to the accused." *Lovasco, supra,* at 2048–2049. Speaking for the majority in *Lovasco,* Justice Marshall described the standards a court must apply in assessing a due process claim based on preindictment delay as follows:

> Judges are not free, in defining "due process," to impose on law enforcement officials our "personal and private notions" of fairness and to "disregard the limits that bind judges in their judicial function." [citations omitted] Our task is more circumscribed. We are to determine only whether the action complained of—here, compelling respondent to stand trial after the Government delayed indictment to investigate further—violates those "fundamental conceptions of justice which lie at the base of our civil and political institutions," [citation omitted], and which define "the community's sense of fair play and decency," [citations omitted].

As stated above, defendant must show that he has been prejudiced by the delay in bringing this indictment. In this regard, he claims that his former fiancee has become an antagonistic witness during the period of the delay, that he has been denied a dismissal of the claims against him on state law grounds, that he has been denied the benefit of the state law objective test for an entrapment defense, that there has been a further erosion of the protections of the Fourth Amendment since the time of his arrest, and that claims which had previously been dismissed in state court have been resurrected by the federal indictment, all of which are prejudicial to his defense.

■ To the extent that defendant claims prejudice solely as a result of the difference in state and federal law, those claims are without merit. After the Supreme Court's decision in *Abbate v. United States,* 359 U.S. 187, 79 S.Ct. 666, 3 L.Ed.2d 729 (1959), it is well settled that the federal government has the power to prosecute a defendant even though he has previously been prosecuted by the state for the same conduct. Successive prosecutions by the state and federal governments do not violate the Double Jeopardy Clause of the Fifth Amendment because they are actions taken by two independent sovereignties. Even though a defendant may bear an additional burden by having to answer in both state and federal courts for conduct which violates state and federal law, defendant suffers no prejudice. Consequently, defendant here suffers no prejudice by the dismissal of the state prosecution and subsequent federal prosecution since he could clearly be prosecuted by *both* the state and federal governments. *Abbate, supra.*

Nor is a different conclusion required simply because defendant might have received a dismissal of the charges in state court based on the denial of his right to a speedy trial. In *United States v. Purham,* 725 F.2d 450 (8th Cir.1984), the Eight Circuit considered an appeal challenging the trial court's denial of a motion to dismiss based on preindictment delay where the state court had in fact dismissed with prejudice the charges against the defendant for failure to grant a speedy trial. Shortly after that dismissal, the defendant was indicted by a federal grand jury. The circuit court affirmed defendant's conviction noting that defendant had failed to show that he suffered actual prejudice to the defense of his case by the 14-month delay between the date of the criminal acts and the federal indictment. *Id.* at 453.

The Supreme Court has suggested that there would be an exception to the dual sovereignty principle where one sovereign is "merely a tool" for the other, or where one "prosecution was a sham and a cover" for the other. *Bartkus v. Illinois,* 359 U.S. 121, 123, 79 S.Ct. 676, 678, 3 L.Ed.2d 684 (1959). Although defendant asserts that the delay in this case was the result of

prosecutorial gamesmanship, there is no evidence that there was such collusion between the state and federal prosecutors that the state criminal proceedings could be considered a sham and a cover for the present federal prosecution. The most that has been shown is that state and federal authorities cooperated to investigate and prosecute certain criminal activities.

 There is also insufficient evidence that the cooperation between the state and federal prosecutors and the delay in bringing the federal indictment were the result of improper prosecutorial manipulations designed to obtain an unfair advantage over defendant. The Assistant United States Attorney has represented to the Court that federal authorities had made the decision to prosecute the defendant well before defendant filed his motion to dismiss the state prosecution for denial of his right to a speedy trial and over a year before the state actually dismissed its case. He also explained that the delay between the decision to prosecute and obtaining a grand jury indictment was the result of a continuing investigation into criminal activities related to this case as well as the failure to bring the charges before the grand jury because of other business.

 As discussed above, evaluation of a due process claim based on preindictment delay requires the Court to consider the prejudice to the defendant in light of the reasons for the delay. While a delay caused by the prosecution to gain an improper advantage or recklessly incurred when the prosecution knows of the potential prejudice to defendant would weigh heavily in favor of dismissing the indictment, prosecution of a defendant "following investigative delay does not deprive him of due process, even if his defense might have been somewhat prejudiced by the lapse of time." *Lovasco,* 431 U.S. at 796, 97 S.Ct. at 2052. Here, defendant has failed to demonstrate substantial actual prejudice to his defense resulting from the delay in bringing the federal indictment against him. The federal prosecutor has asserted that a large portion of the delay

involved was necessary for investigative purposes. For the reasons discussed above, the Court concludes that defendant has not been denied due process of law as a result of preindictment delay.

Defendant also claims that the indictment should be dismissed pursuant to Fed. R.Crim.P. 48(b). That rule provides in pertinent part:

> If there is unnecessary delay in presenting the charge to a grand jury or in filing an information against a defendant who has been held to answer to the district court, or if there is unnecessary delay in bringing a defendant to trial, the court may dismiss the indictment, information or complaint.

 As with speedy trial protections, Rule 48(b) is only implicated after a defendant is arrested or charged with a crime. *Lovasco, supra* at n. 8; *United States v. Marion,* 404 U.S. 307, 92 S.Ct. 455, 463, 30 L.Ed.2d 468 (1971); *United States v. Ciammitti,* 720 F.2d 927 (6th Cir.1983). *See also United States v. Giacalone,* 477 F.2d 1273 (6th Cir.1973). Since defendant was charged with violation of federal law on January 12, 1984, there is little merit to the argument that Rule 48(b) requires dismissal because of the delay between the indictment and trial scheduled in this case. However, defendant seems to argue that his arrest by state authorities should be deemed the triggering event for evaluating whether Rule 48(b) should be invoked.

 This argument was specifically rejected by the Second Circuit in *United States v. Mejias,* 552 F.2d 435 (1977), based on its determination that the doctrine of dual sovereignty applied. Other circuits have rejected similar arguments concluding that an arrest by state authorities does not trigger Speedy Trial Act time limitations in federal court because of the dual sovereignty doctrine. *See, United States v. Carlson,* 697 F.2d 231, 235 (8th Cir.1983); *United States v. Iaquinta,* 674 F.2d 260, 264 (4th Cir.1982); *United States v. Wilson,* 657 F.2d 755, 767 (5th Cir.1981). Since there is no claim of unnecessary delay be-

tween the time of the indictment and the scheduled trial in this case, dismissal is not warranted under Rule 48(b). Consequently, defendant's motion to dismiss the indictment is denied.

## MOTIONS TO SUPPRESS

 Defendant has filed motions to suppress evidence obtained in searches of his person, automobile and house subsequent to his arrest. Although defendant was arrested by state authorities and the searches were conducted by state officials, this Court must make an independent determination of the validity of those searches under the Fourth Amendment, notwithstanding that the state may have inquired into the validity of the searches under state or federal law. *Elkins v. United States*, 364 U.S. 206, 224, 80 S.Ct. 1437, 1447, 4 L.Ed.2d 1669 (1960). The challenged searches will be examined in the order listed above.

### Search of Defendant's Person

 Defendant argues that the search of his person after his arrest and prior to his being placed in a jail cell was invalid because the warrant issued for his arrest was invalid. In this case, defendant was arrested by state authorities some time after he had allegedly delivered a quantity of drugs to an undercover informant. Defendant has not produced the arrest warrant and has not indicated any reason why that warrant was defective, nor has defendant stated any reason why his arrest was unreasonable under the Fourth Amendment. In absence of any factual basis for defendant's claim, the Court must conclude that the arrest warrant was valid.

Assuming that defendant's arrest was made pursuant to a valid warrant, the subsequent search of defendant's person prior to his being placed in a jail cell was permissible. Whether justified as a search incident to arrest, *United States v. Robinson*, 414 U.S. 218, 236, 94 S.Ct. 467, 477, 38 L.Ed.2d 427 (1973), *United States v. Edwards*, 415 U.S. 800, 807, 94 S.Ct. 1234, 1239, 39 L.Ed.2d 771 (1974), or as an inven-

tory search of defendant's personal effects prior to his being placed in a cell, *Illinois v. Lafayette*, —— U.S. ——, 103 S.Ct. 2605, 2610, 77 L.Ed.2d 65 (1983), the search of defendant's person at the county jail did not violate the Fourth Amendment. *See also Bell v. Wolfish*, 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979) holding that strip searches of pretrial detainees in a detention facility after each contact visit with a person from outside the institution does not violate the Fourth Amendment. Based on the foregoing, defendant's motion to suppress the evidence obtained as a result of the search of his person is denied.

### Search of the Automobile Trunk

After defendant and his passenger were taken into custody by officers of the Benzie County Sheriff's Department, one of the arresting officers took defendant's car keys and opened the trunk of the vehicle where he found a plastic bag which was subsequently discovered to contain marijuana. Defendant claims the search of his trunk under the circumstances of this case was unreasonable and violated the Fourth Amendment.

In making this argument, defendant acknowledges that a warrantless search of the entire passenger compartment and any containers found within the passenger compartment has been held by the Supreme Court to be permissible under the Fourth Amendment. *New York v. Belton*, 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981). However, as defendant notes, the *Belton* rule limits the scope of the search to the passenger compartment and containers within the passenger compartment. It does not permit the authorities to search the trunk. *Id.* at n. 4. Defendant also acknowledges that the Supreme Court's decision in *United States v. Ross*, 456 U.S. 798, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982), permits the authorities to conduct a thorough search of any vehicle without a warrant so long as there is probable cause to believe that there is contraband located within the vehicle. Defendant argues, and the government apparently concedes, that the search of defendant's trunk at the time

of his arrest could not be justified under *Ross* since probable cause did not exist at that time to believe that the vehicle contained any contraband.

The government contends that because both defendant and his companion were taken into custody, it was necessary to impound the vehicle to prevent it from being left on the highway. Under a written policy of the Benzie County Sheriff's Department, an inventory must be made of the contents of any impounded vehicle. In *South Dakota v. Opperman*, 428 U.S. 364, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976), the Supreme Court held that warrantless inventory searches of impounded vehicles by authorities pursuant to a standard policy or procedure do not violate the Fourth Amendment. There the Supreme Court pointed to four factors supporting its conclusion that inventory searches are reasonable under the Fourth Amendment: (1) the diminished expectation of privacy in an automobile; (2) the promotion of important public interests ("the protection of the owner's property while it remains in police custody, [citation omitted], the protection of the police against claims or disputes over lost or stolen property [citation omitted]; and the protection of the police from potential danger, [citation omitted]," 428 U.S. at 369, 96 S.Ct. at 3097); (3) the inability of the onwer of the vehicle to make other arrangements to protect his property; and (4) inventory searches are conducted in accordance with a standard police procedure.

Defendant argues· that, even if an inventory search was proper under the circumstances existing in this case, the permissible scope of that search should not extend to a locked trunk and separate containers within the trunk citing *United States v. Wilson*, 636 F.2d 1161 (8th Cir.1980). After examining the policy reasons justifying an inventory search of an impounded automobile, the Eight Circuit in *Wilson* concluded that an individual has a greater expectation of privacy in a locked trunk than in the interior of his automobile. Based on this conclusion that court held that "the needs of the Government in conducting an inventory search may be ordinarily accomplished without the serious intrusion into the locked trunk of an automobile." *Id.* at 1165.

However, other circuits have not adopted this position. In *United States v. Edwards*, 577 F.2d 883, 893 (5th Cir.), *cert. denied*, 439 U.S. 968, 99 S.Ct. 458, 58 L.Ed.2d 427 (1978), the court discussed the permissible scope of an inventory search. The Fifth Circuit stated that the inventory search must be reasonable in light of the interests which justify such searches and must be "limited in scope to those places within the interior or trunk of an automobile where, under the particular circumstances of the case, property of the owner or occupant can reasonably be expected to be found." *See also United States v. Long*, 705 F.2d 1259 (10th Cir.1983); *United States v. Bosby*, 675 F.2d 1174 (11th Cir.1982)(citing *Edwards, supra*); and *United States v. Martin*, 566 F.2d 1143, 1145 (10th Cir.1977).

 In light of these cases, this Court is not persuaded that a valid inventory search must stop short of the locked trunk of an automobile. To protect themselves against spurious claims of lost or stolen property, the authorities must know the contents of any vehicle which they impound. This is especially true in this case since the Benzie County authorities did not have their own impoundment facility and relied on private contractors to tow and store impounded vehicles.

The inventory form which the sheriff's deputy was required to complete prior to releasing the vehicle for impoundment asked him to determine if the vehicle had a spare tire. To obtain that information, it was necessary to open the trunk of the car. The Court is persuaded that under the circumstances of this case, opening the locked trunk with the keys obtained from defendant was reasonable under the Fourth Amendment as an inventory search conducted pursuant to the standard policy and practice of the sheriff's department.

The *Opperman* court did suggest that the validity of an inventory search would

be open to attack if it could be shown that the impoundment of the vehicle and subsequent inventory search was a pretext to avoid having to meet the requirements for obtaining a search warrant. Although defendant argues that the search was conducted for investigatory purposes, this allegation was not supported by the testimony at the hearing. For the foregoing reasons, the Court denies defendant's motion to suppress the evidence obtained during the search of the trunk of defendant's car.

*Search of Defendant's Home*

Two warrants were issued by the state district court to permit searches of defendant's home by an agent of the Michigan Department of Treasury and an officer of the Wyoming Police Department. Defendant challenges the validity of these warrants claiming that probable cause was not established by the affidavits in support of the warrants.

■ The task of a magistrate in issuing a search warrant "is simply to make a practical, common-sense decision whether, given all the circumstances set fourth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of the persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a 'substantial basis for .. conclud[ing]' that probable cause existed. [citation omitted]." *Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1983).

■ The Court has reviewed the challenged search warrants in light of the standards outlined above and finds that there was a substantial basis for the state court's finding that probable cause existed to believe that the items sought in the search warrants would be found at the residence of defendant. Consequently, defendant's motion to suppress the evidence obtained as a result of the searches of his home is denied.

**MOTION FOR DISCOVERY**

Defendant has also moved for discovery of the names and other information about witnesses to be called by the government at trial, copies of all police reports related to the investigation and prosecution of defendant, and a description of any exculpatory evidence possessed by the government.

In the government's brief, the Assistant United States Attorney represents that he has provided defendant with a copy of the substance of any oral statements defendant has made, a copy of defendant's criminal record, copies of the scientific and lab tests conducted on the drugs involved in this case, and has advised defendant that the drugs and other items seized pursuant to the searches involved in this case may be used as physical evidence at trial.

■ In regard to defendant's request for a witness list, the prosecution is under no general obligation to disclose the names of witnesses prior to their testifying at trial. *Weatherford v. Bursey*, 429 U.S. 545, 559, 97 S.Ct. 837, 845, 51 L.Ed.2d 30 (1977). Nor is he entitled to the other information he requests concerning the government's witnesses until after they have testified at trial. The Jencks Act, 18 U.S.C. § 3500.

■ Defendant also requests copies of all police reports related to the investigation and prosecution of defendant. Rule 16(a)(2) of the Federal Rules of Criminal Procedure provides in pertinent part:

> [T]his rule does not authorize the discovery or inspection of reports, memoranda, or other internal government documents made by the attorney for the government or other government agents in connection with the investigation or prosecution of the case, or of the statements made by government witnesses or prospective government witnesses except as provided in 18 U.S.C. § 3500.

Consequently, the Court will not order the government to provide the reports which defendant seeks.

Finally, defendant requests the government to produce all exculpatory evidence in

the government's possession. The Assistant United States Attorney has represented to the Court that the government recognizes its obligations under *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), and the cases interpreting that decision, and will provide defendant with any exculpatory evidence at the time of trial.

For the reasons discussed above, the Court denies defendant's motion for discovery.