**UNITED STATES of America**

v.

**Gregory CHERRY, a/k/a "G," a/k/a "Ninja," et al., Defendants.**

**No. S1 94 Cr. 313 (CSH).**

United States District Court, S.D. New York.

Feb. 17, 1995.

Mary Jo White, U.S. Atty. S.D. of N.Y. by James A. Goldston, Jonathan D. Schwartz, Asst. U.S. Attys., for the U.S.

Paul Crotty, Corp. Counsel, Janet J. Lennon, Deputy Com'r, by James J. Osgood, New York City Police Dept., Legal Bureau, New York City, for the New York City Police Dept.

Lisa Scolari, New York City, for defendant Cherry.

### MEMORANDUM OPINION AND ORDER

HAIGHT, District Judge:

The government and the New York City Police Department ("NYCPD") move to quash four subpoenas served by defendant Gregory Cherry upon the NYCPD pursuant to Rule 17(c) of the Federal Rules of Criminal Procedure. The subpoenas variously seek the production of arrest reports, aided cards, unusual occurrence reports, complaint reports and complaint follow-ups [1] concerning

---

1. In its letter brief dated January 19, 1995 ("January 19 Letter") at p. 2, the government provides the following description of these documents:

"*Aided card:* typically records basic information concerning the victim of a crime.

*Unusual occurrence report:* typically contains basic information about the circumstances of a homicide or other serious crime, together with information concerning victims, perpetrators, and personnel within the NYPD, the District Attorney's Office, and the Medical Examiner's Office who have been notified about that crime.

*Complaint report:* typically contains a brief description of the known facts surrounding the crime, including the location, date, and time of the crime, descriptions of perpetrators, and weapons used; usually the first report in a file prepared by an investigating officer.

*Complaint follow-up reports:* typically form the bulk of the investigative file, with descriptions of

the homicides of Javier Torres and Frank Robles on May 14, 1992 and Lourdes Cintron on July 8, 1992; and a robbery which occurred on October 10, 1992. The homicides are alleged as predicate acts against Cherry in the superseding indictment. In support of its motion, the government[2] argues: (1) that Cherry's use of Rule 17(c) subpoenas is an impermissible circumvention of the discovery bar of Rule 16(a)(2); (2) alternatively, that Cherry cannot meet the requirements for provision of the documents under Rule 17(c); and (3) that the documents are protected by the "law enforcement privilege."

Because I agree with the government's first two arguments, the subpoenas will be quashed. I do not reach the third asserted basis for doing so.

*Rule 16(a)(2)*

■ Rule 16 governs the conduct of discovery in criminal cases. It is a rule of checks and balances. Rule 16(a) provides for governmental disclosure of evidence. Rule 16(b) provides for reciprocal disclosure by a defendant who invokes Rule 16(a).

Other balances appear within Rule 16(a). Rules 16(a)(1) identifies the evidence the government is required to disclose on defendant's request. Several specific forms of evidence are covered by sub-paragraphs within Rule 16(a)(1): defendant's statements, ¶ (A); his prior record, ¶ (B), documents and tangible objects, ¶ (C); reports of examinations and tests, ¶ (D); and opinions of expert witnesses, ¶ (E). Rule 16(a)(2) then identifies information not subject to disclosure to a defendant. It provides:

> Except as provided in paragraphs (A), (B), (D), and (E) of subdivision (a)(1), this rule does not authorize the discovery or inspection of reports, memoranda, or other internal government documents made by the attorney for the government or other government agents in connection with the investigation or prosecution of the case. Nor does the rule authorize the discovery or inspection of statements made by government witnesses or prospective government witnesses except as provided in 18 U.S.C. § 3500.

■ Rule 16(a)(2) does not define "government." That is to say, the draftsmen did not specify whether the rule's protection against disclosure is limited to documents generated by the federal government, or whether it also extends to documents generated by local or state agents "in connection with the investigation or prosecution of the case" which have subsequently come into the hands of federal prosecutors. Similarly Rule 16(a)(1)(A), which requires disclosure to defendant of, *inter alia,* the substance of his oral statements to "any person then known by the defendant to be a government agent," does not define "government."

The distinction makes a difference in this case because about 95 percent of the federal prosecutors' investigatory file consists of documents generated by the NYCPD during the course of its own, independent activities prior to a reference to the United States Attorney for prosecution under the RICO statute and other provisions of federal criminal law. Predictably, in the Rule 16(a)(2) context the government argues for a broad definition of "government," so as to include a local force such as the NYCPD, while Cherry argues for a narrow definition, limited to federal agents.

It is clear enough that if this issue is resolved in the government's favor, the subpoenas must be quashed. They seek to reach the sort of documents that have traditionally been held to be barred from disclosure by Rule 16(a)(2). *See United States v. Koskerides,* 877 F.2d 1129, 1133–34 (2d Cir. 1989) (IRS agent's tax report precluded from discovery under Rule 16(a)(2)); *United States v. Rufolo,* No. 89 Cr. 938 (KMW), 1990 WL 29425, at *1 (S.D.N.Y. March 13, 1990) (Rule 16(a)(2) held to bar disclosure of investigative, agent, and surveillance reports prepared by federal agents), *aff'd,* 930 F.2d 911 (2d Cir.), *cert. denied,* 502 U.S. 841, 112 S.Ct. 130, 116 L.Ed.2d 97 (1991); *United States v. Feola,* 651 F.Supp. 1068, 1142–43 (S.D.N.Y. 1987) (disclosure of investigative files and

---

many of the wide-ranging tasks performed in the course of an investigation."

**2.** For the sake of simplicity, I will treat the NYCPD's arguments in support of quashing the subpoenas as subsumed within the government's.

interview reports of law enforcement officials barred by Rule 16(a)(2)) (Brieant, Ch.J.); *United States v. Sileven*, 985 F.2d 962, 966 (8th Cir.1993) (Rule 16(a)(2) precluded disclosure of government's case files and investigative reports concerning the defendant's investigation).

A number of cases have extended Rule 16(a)(2) protection to reports generated by local or state law enforcement officers. *See United States v. Jones*, No. 85 Cr. 1075 (CSH), 1986 WL 275, at *6 (S.D.N.Y. May 28, 1986) (defendants not entitled to disclosure of FBI and NYCPD police reports relating to identifications of defendants; such material "falls squarely within [Rule 16(a)(2)'s] prohibition"); *United States v. Marshak*, 364 F.Supp. 1005, 1008 (S.D.N.Y.1973) (NYCPD investigative reports concerning the case exempt from discovery under predecessor to Rule 16(a)(2)); *United States v. Johnson*, No. 87 Cr. 348 (WF), 1988 WL 42409, at *1 (D.Mass. April 12, 1988) (pursuant to Rule 16(a)(2) defendant not entitled to disclosure of police reports made in connection with investigation of case); *United States v. Duncan*, 586 F.Supp. 1305, 1313 (W.D.Mich.1984) (police reports related to the investigation of defendant's federal narcotics case which initially began as state investigation and prosecution barred from disclosure by Rule 16(a)(2)). They do so without analysis or discussion of whether such officers are "government" agents within the ambit of the rule. Nor, with the exception of *United States v. Duncan*, do these cases reveal whether the federal and local investigations were joint, or whether local officers conducted an independent inquiry prior to federal involvement.[3] That factor made no difference to the court in *Duncan*. The case began as a locally investigated state narcotics prosecution which was dismissed "to permit the federal authorities to prosecute defendant for the same acts." 586 F.Supp. at 1308. The court held that "all police reports related to the investigation and prosecution of defendant" were shielded from disclosure by Rule 16(a)(2).

However, two district courts, in decisions equally lacking in analysis or discussion, have held that local or state reports prepared prior to the federal government's involvement in the case were subject to disclosure, notwithstanding the rule. *See United States v. Green*, 144 F.R.D. 631, 640–41 (W.D.N.Y. 1992) (in federal racketeering prosecution, court held that government must disclose reports and records prepared by state or local law enforcement agencies unless they were prepared as the product of a *joint* federal-state investigation or became the work product of federal investigators); *United States v. DeBacker*, 493 F.Supp. 1078, 1082 (W.D.Mich.1980) (state police reports made before federal involvement in narcotics prosecution were not exempt from discovery under Rule 16(a)(2)).

In another case, the court held that only police reports prepared *after* the criminal investigation "acquired its joint city-federal character" were afforded the protection of Rule 16(a)(2), but denied defendant's motion to compel the balance of the reports holding that the materials were not "documents" subject to disclosure under Rule 16(a)(1). *United States v. Jones*, 149 F.R.D. 139, 141 (N.D.Ohio 1993). Finally, in *United States v. Gatto*, 729 F.Supp. 1478 (D.N.J.1989), the court denied a government motion to quash a subpoena which sought production of documents "from various state law enforcement agencies." The court ruled that the materials were not excluded from discovery by Rule 16(a)(2) because the rule applies "only to attorney work product on the current case, not to investigations and prosecutions from the past." *Id.* at 1481.[4]

---

3. I am in a position to say that the case before this Court, *United States v. Jones*, was from its inception a joint federal-state task force investigation.

4. It is not at all clear from the *Gatto* opinion whether the police documents sought were prepared in connection with an investigation of conduct forming the basis of the federally charged crimes or other unrelated conduct. From the court's characterization of the holding in a later case, it appears that the materials may have been prepared for the latter purpose. *See United States v. Gatto*, 746 F.Supp. 432, 479 (D.N.J. 1990) (referring to "past or unrelated cases"). If that is true, the court did not actually confront the issue presented in this case. For the purposes of this Opinion, I will assume that the circumstances presented in *Gatto* were similar to those at bar.

The Supreme Court and the Second Circuit do not appear to have addressed the issue of whether Rule 16(a)(2) bars disclosure of investigative reports generated by local or state agents, either independently or as part of a joint operation with federal authorities.

I hold that in a federal prosecution based in part upon the investigative efforts of local or state law enforcement agents, Rule 16(a)(2) bars disclosure of reports generated by such agents; and that it makes no difference whether the local or state agents generated their reports as part of an independent investigation or during the course of a joint federal operation.

I reach that conclusion because of the principle underlying Rule 16(a)(2), and the practical consequences of a contrary holding.

The underlying principle is the "work product" doctrine, originally articulated by the Supreme Court as a bar to discovery in civil litigation, *Hickman v. Taylor*, 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947), but later characterized as playing an "even more vital" role "in assuring the proper functioning of the criminal justice system," *United States v. Nobles*, 422 U.S. 225, 238, 95 S.Ct. 2160, 2170, 45 L.Ed.2d 141 (1975). Rule 16(a)(2) "contains two exemptions to disclosure, designed to preserve the secrecy of government files." 8 *Moore's Federal Practice* (2d ed. 1994) at ¶ 16.02[2], p. 16–45. The first exception, upon which the motion at bar turns, "embodies the 'work product' rule, which protects from disclosure a litigant's theories and thought processes contained in internal notes and memoranda related to the case." *Id.* In *Nobles* the Supreme Court said of the doctrine in a criminal context:

At its core, the work-product doctrine shelters the mental process of the attorney, providing a privileged area within which he can analyze and prepare his client's case. But the doctrine is an intensely practical one, grounded in the realities of litigation in our adversary system. One of those realties is that attorneys often must rely on the assistance of investigators and other agents in the compilation of materials in preparation for trial. It is therefore necessary that the doctrine protect material prepared by agents for the attorney as well as those prepared by the attorney himself.

422 U.S. at 238–39, 95 S.Ct. at 2170 (footnote omitted).

It is clear enough that this principle of work product secrecy will be undermined, indeed in the case at bar done away with entirely, if the protection of Rule 16(a)(2) is limited to reports prepared by federal investigators and agents. One should hesitate to eviscerate so important a principle, particularly where the language of the rule does not explicitly require it. Rule 16(a)(2) protects from disclosure reports by "government" agents "in connection with the investigation or prosecution of the case." The NYCPD files sought to be subpoenaed at bar fit within that description, unless the rule must be given the narrow construction for which Cherry contends. I accept that the rule may receive a broad or narrow reading. I prefer the broader reading because it vindicates the underlying legal principle. The narrow reading serves no countervailing public policy; certainly Cherry suggests none. Cherry's purpose is simply to gain access to the government's entire file. The purpose is understandable, but not sanctioned by Rule 16. *See Feola*, 651 F.Supp. at 1143 (under Rule 16 "criminal defendants are not entitled to complete disclosure of all evidence in the Government's files which might conceivably assist them in the preparation of their defense....").

This federal prosecution is a direct outgrowth of investigations by local authorities. Those investigations covered the same conduct by the same defendants charged in the federal indictment. For all practical purposes, including the application of Rule 16(a)(2), this local investigation and federal prosecution should be considered one "case."[5] To hold otherwise, thereby making underlying local or state investigatory files subject to pre-trial discovery by a subsequently federally indicted defendant, would

---

5. Thus it is not surprising that in 1994 two Bronx County Assistant District Attorneys and three NYCPD detectives were deputized as Special Assistant United States Attorneys and as Drug Enforcement Task Force officers respectively.

in all likelihood inhibit cooperation between local and federal law enforcement agencies, to the benefit of criminals [6] but to the detriment of the public good.

Accordingly, Rule 16(a)(2) bars pre-trial disclosure of the files sought to be reached by these subpoenas.

*Rule 17(c)*

■ Assuming *arguendo* that any of the materials identified by the subpoenas are not protected from disclosure by Rule 16(a)(2), the subpoenas must nevertheless be quashed because Cherry has failed to satisfy the requirements for their production under Rule 17(c).

■ Rule 17(c) is not a method of discovery in criminal cases. Indeed, "[c]ourts must be careful that rule 17(c) is not turned into a broad discovery device, thereby undercutting the strict limitation of discovery in criminal cases found in Fed R.Crim.P. 16." *United States v. Cuthbertson*, 630 F.2d 139, 146 (3d Cir.1980), *cert. denied*, 449 U.S. 1126, 101 S.Ct. 945, 67 L.Ed.2d 113 (1981). To ensure that Rule 17(c) subpoenas are not so abused, a party seeking production of documents must demonstrate that the materials sought are: (1) relevant; (2) admissible; and (3) specifically identified. *United States v. Nixon*, 418 U.S. 683, 700, 94 S.Ct. 3090, 3103–04, 41 L.Ed.2d 1039 (1974). The government's primary challenge to Cherry's subpoenas is that they fail to meet the condition of admissibility.

The government maintains that the documents themselves could not be admitted into evidence at trial because they are hearsay not falling under one of the exceptions contained in the Federal Rules of Evidence. Their sole use to Cherry at trial would be as impeachment material which, the government insists, is not obtainable through Rule 17(c). Cherry counters that although the documents themselves may not be admissible at trial, admissibility of the *documents* is not a requirement of Rule 17(c). Rather, the documents need only contain information which could be admissible such as, in this case, statements made by eyewitnesses. Moreover, Cherry contends that Rule 17(c) subpoenas may legitimately be used to obtain material whose sole evidentiary value is to impeach the credibility of witnesses. Cherry is mistaken in both respects.

■ Rule 17(c) may be used to obtain only evidentiary materials. "[A]ny document or other materials, *admissible as evidence*, obtained by the Government by solicitation or voluntarily from third persons is subject to subpoena." *Bowman Dairy Co. v. United States*, 341 U.S. 214, 221, 71 S.Ct. 675, 679, 95 L.Ed. 879 (1951) (emphasis added). The weight of authority holds that in order to be procurable by means of a Rule 17(c) subpoena, materials must themselves be admissible evidence. *See United States v. Murray*, 297 F.2d 812, 821 (2d Cir.1962) ("Rule 17(c) is a device solely for the obtaining of evidence for the use of the moving party, permitting him to examine the material obtained before trial only where ... it is necessary that he do so in order to make use of the material as evidence."), *cert. denied*, 369 U.S. 828, 82 S.Ct. 845, 7 L.Ed.2d 794 (1962); *United States v. Reed*, 726 F.2d 570, 577 (9th Cir. 1984) (court properly quashed subpoena seeking production of documents which would not have been admissible "under the limitations of Federal Rules of Evidence 803(8)(B)"); *United States v. Cuthbertson*, 651 F.2d 189, 195 (3d Cir.1981) (materials which were hearsay on their face and therefore not admissible as evidence at trial were not subject to Rule 17(c) subpoena), *cert. denied*, 454 U.S. 1056, 102 S.Ct. 604, 70 L.Ed.2d 594 (1981); *United States v. Rich*, No. 83 Cr. 579 (SWK), 1984 WL 845, at *3 (September 7, 1984) ("Rule 17(c) requires a showing that the materials sought are currently admissible in evidence; it cannot be used as a device to gain understanding or explanation."); *United States v. Scarfo*, 711 F.Supp. 1315 (E.D.Pa.1989) (holding that court did not err in implicitly quashing Rule 17(c) subpoenas seeking documents which would not have been admitted into evidence), *aff'd* 910 F.2d 1084 (3d Cir.1990); *United*

---

**6.** I am here concerned only with matters of public policy. I intimate no view as to the guilt or innocence of the defendants at bar, who are presumed innocent and must be proven guilty beyond a reasonable doubt.

*States v. Vanegas,* 112 F.R.D. 235, 238 (D.N.J.1986) (handwriting exemplars were evidentiary materials the government could use at trial and therefore subject to subpoena under Rule 17(c)); *United States v. Walters,* 558 F.Supp. 726, 728 (D.Md.1980) (Rule 17(c) may be used only to obtain materials which may be used in evidence at trial); *United States v. Maloney,* 37 F.R.D. 441, 445 (W.D.Pa.1965) (A rule 17(c) subpoena applies only to evidentiary material admissible in evidence at trial; "[t]his would exclude reports and memoranda of investigating officers, which have no evidentiary value, unless the officer is called as a witness, when they may become evidentiary for the purpose of impeachment.").

In this respect, Rule 17(c) can be contrasted with the civil rules which permit the issuance of subpoenas to seek production of documents or other materials which, although not themselves admissible, could lead to admissible evidence. *See United States v. Marchisio,* 344 F.2d 653, 669 (2d Cir.1965) ("Unlike the rule in civil actions, a subpoena *duces tecum* in a criminal action is not intended for the purpose of discovery; the document sought must at that time meet the tests of relevancy and admissibility."); *United States v. Gross,* 24 F.R.D. 138, 141 (S.D.N.Y.1959) (Rule 17(c) cannot be used "to obtain leads as to the existence of additional documentary evidence or to seek information relating to the defendant's case. This type of discovery, permissible under the Federal Rules of Civil Procedure, has not been authorized for criminal trials.").

■ Notwithstanding Cherry's assertions to the contrary, documents are not evidentiary for Rule 17(c) purposes if their use is limited to impeachment. In *Nixon,* the Court noted that while audiotapes sought by the Rule 17(c) subpoena would be admissible for impeachment purposes, "[g]enerally, the need for evidence to impeach witnesses is insufficient to require its production in advance of trial." 418 U.S. at 701, 94 S.Ct. at 3104 (citation omitted). Because the audiotapes had "other valid potential evidentiary uses," the subpoenas ordering their production were held valid. *Id.* at 702, 94 S.Ct. at 3104–05. Courts have consistently interpret-

ed the admissibility standard of Rule 17(c) to preclude production of materials whose evidentiary use is limited to impeachment. *See United States v. Hughes,* 895 F.2d 1135, 1146 (6th Cir.1990) (quashing Rule 17(c) subpoena of documents sought for impeachment purposes); *United States v. Fields,* 663 F.2d 880, 881 (9th Cir.1981) (district court's issuance of Rule 17(c) subpoena was abuse of discretion where only evidentiary use of materials sought was impeachment of witnesses); *United States v. Cuthbertson,* 651 F.2d at 195 (Rule 17(c) subpoena improperly sought materials whose only evidentiary use was for impeachment purposes); *United States v. Giampa,* No. 92 Cr. 437 (PKL), 1992 WL 296440, at *3 (October 7, 1992) (defendant was not entitled to production of impeachment evidence before trial through means of Rule 17(c) subpoena).

Applying these standards to the documents sought in the subpoenas at bar, it is clear that they do not satisfy the admissibility requirement of Rule 17(c). The documents themselves are concededly inadmissible hearsay and could not therefore be introduced as evidence at trial. While they may undoubtedly be used to impeach witnesses who testify at trial, admissibility for that narrow purpose does not qualify them as evidentiary under Rule 17(c). The subpoenas must accordingly be quashed.

It is SO ORDERED.