UNITED STATES of America

v.

Alexander SALVAGNO, Raul Salvagno, and AAR Contractor, Inc., Defendants.

No. 5:02–CR–51 (HGM).

United States District Court, N.D. New York.

May 22, 2003.

**250**

Hon. Glenn T. Suddaby, United States Attorney, Northern District of New York, Syracuse, NY (Craig A. Benedict, Assistant United States Attorney, of counsel), for U.S.

Skolnick, Hochberg & Bernfeld, P.C., New York City (David Bernfeld, of counsel), for Alexander Salvagno.

Emil M. Rossi, Syracuse, NY, for Raul Salvagno.

Skolnick, Hochberg & Bernfeld, P.C., New York City (David Bernfeld, of counsel), for AAR Contractor, Inc.

## MEMORANDUM—DECISION AND ORDER

MUNSON, Senior District Judge.

Currently before the court are motions pursuant to Rule 17(c)(2) of the Federal Rules of Criminal Procedure by the Government, and non-parties, Spectrum Environmental Associates ("SEA") and the City of Albany, New York ("the City"), to quash subpoenas *duces tecum* served by defendants and made returnable at trial. For the following reasons, the government's and non-parties' motions to quash are GRANTED.

## BACKGROUND

### I. Underlying Prosecution

The government has charged defendants Alexander Salvagno, Raul Salvagno, and their company, AAR Contractor, Inc., with various crimes stemming from their asbestos abatement business. Count One of the fourteen count Second Superceding Indictment ("the Indictment") charges defendants with thirty-three acts of racketeering in violation of 18 U.S.C. § 1962(d). Specifically, Count One sets forth a pattern of racketeering activity consisting of: (1) obstruction of justice, in violation of 18 U.S.C. § 1512(b)(2)(B) (racketeering act one); (2) obstruction of justice, in violation of 18 U.S.C. §§ 1512(b)(1) and (b)(3) (racketeering act two); (3) money laundering, in violation of 18 U.S.C. § 1956(a)(1)(B)(i) and 18 U.S.C. § 2 (racketeering acts three through nine); (4) money laundering, in violation of 18 U.S.C. § 1956(a)(1)(B)(i) and 18 U.S.C. § 2 (racketeering acts ten through fourteen); and, (5) money laundering, in violation of 18 U.S.C. § 1956(a)(1)(A)(i) and 18 U.S.C. § 2 (rack-

eteering acts fifteen through thirty-three). Count Two charges defendants with conspiring to violate the Clean Air Act, 42 U.S.C. §§ 7401 et seq. and the Toxic Substances Control Act, 15 U.S.C. §§ 2601 et seq. Counts Three through Eleven charge defendants with violating the Clean Air Act, 42 U.S.C. § 7413(c)(1) and (2). Counts Twelve through Fourteen charge Alexander Salvagno with filing a false Federal personal income tax return (Form 1040) in violation of 26 U.S.C. § 7206(1). *See* Dkt. No. 112, Second Superceding Indictment.

## II. Motions to Quash

The government indicates that on or about March 13, 2003, defendants served Patricia Senecal, a civilian employee of the United States Department of the Army at the Watervliet Arsenal, with a subpoena purportedly requiring her to produce an immense number of documents including "any and all records reflecting the construction, maintenance, renovation, management and or demolition of ... the Watervliet Arsenal ...–Quarters # 1."[1] *See* Dkt. No. 135, Mot. to Quash Subpoena at 1 and 5. The government also indicates that on or about April 8, 2003, defendants served the Custodian of Records at the Watervliet Arsenal, Thomas Friedman, and Edward Kucskar with subpoenas purportedly requiring them to produce a similarly massive number of documents. *See* Dkt. No. 136, Supplemental Mem. in Supp. Mot. to Quash at 1. The government further indicates that on or about April 8, 2003, defendants served the Custodian of Records at the Veterans' Administration Hospital, Albany New York, with a subpoena purportedly requiring the production of all records and documents pertaining or relating to personnel records and any construction, maintenance, renovation, demolition or remediation (including asbestos, hazardous materials or lead removal) projects from January 1990 through the

---

1. Less broadly, the subpoena seeks:

"(1) original building construction documents including architectural and engineering specifications and drawings, contractor submittals, logs, material installation reports, as-builts and substitutions, contracts, payments, field notes and any MSDS sheets; (2) documents reflecting the nature and extent of maintenance activity in any areas containing asbestos materials including but not limited to work reports, incident reports, memorandums and work hour logs; (3) documents reflecting construction/renovation and or demolition projects performed to the building(s) in areas in the general vacinity [*sic*] of asbestos containing materials including but not limited to all architectural and engineering specifications and drawings, contractor submittals, logs, material installation reports, as-builts and substitutions, contracts, payments, field notes and any MSDS sheets; (4) documents reflecting all asbestos related activity at the facility including but not limited to surveys, asbestos management plans, sample test results, reports, quantifications, locations, conditions, communication of hazards, worker certification, respiratory fit tests, medical evaluations, response actions, unintended disturbances, abatement projects, disposal manifests and all record keeping reflecting changes to the facility surveys and response action reports; (5) documents reflecting facility regulatory compliance and or safety and health programs including procedures and requirements for employees, contractors and third parties working at the facility; (6) documents reflecting the result of asbestos or non-asbestos work activities performed on or near asbestos containing materials; (7) documents reflecting all violations and or non-compliance with any local, state or federal laws at the facility; (8) documents reflecting all insurance claims and or law suits involving the facility, contractors and or third parties; and, (9) all records pertaining to AAR Contractor, Inc., and or Analytical Laboratories of Albany, Inc., and or Tim Carroll and or Tom Reed and or any employee of such."
*See* Dkt. No. 135, Mot. to Quash Subpoena at Ex. A.

present. *See* Dkt. No. 137, Second Supplemental Mem. in Supp. of Mot. to Quash at 1 and Ex. 1.

SEA indicates that on or about April 3, 2003, defendants served William L. Massmann, President of SEA, with a subpoena purportedly requiring the production of, *inter alia*, all documents "pertaining to asbestos, hazardous material and or lead abatement services or projects" involving any of some forty separate firms. *See* Massmann Aff. at ¶¶ 1, 3–4.

The City indicates that on or about April 3, 2003, defendants served its Custodian of Records with a subpoena purportedly requiring it to produce all records and documents pertaining or relating to any construction, maintenance, renovation, demolition or remediation for the period January 1, 1990, through the present, involving any of the nine companies, individuals or groups listed. The subpoena also seeks all documents reflecting or pertaining to any actual or alleged non-compliance with any local, state, or federal statute regulating construction, maintenance, renovation, management and/or demolition performed by the City or anyone hired to perform such services by the City from January 1990 through the present. The City also notes that Charles Williams, a senior technician with the City, has been or will be subpoenaed. *See* the City's Mot. to Quash Subpoena.

## DISCUSSION

### I. Motion to Quash: the Standard Under Rule 17(c)(2) of the Federal Rules of Criminal Procedure

■ Rule 17(c) of the Federal Rules of Criminal Procedure governs the issuance of subpoenas that seek the production of documents and other items in criminal cases. Rule 17(c) may only be used to obtain materials that would be admissible as evidence at trial. *See Bowman Dairy Co. v. United States,* 341 U.S. 214, 221, 71 S.Ct. 675, 95 L.Ed. 879 (1951); *United States v. Murray,* 297 F.2d 812, 821 (2d Cir.1962). Rule 17(c) is not to be used as a discovery method in criminal cases, and " '[c]ourts must be careful that Rule 17(c) is not turned into a broad discovery device, thereby undercutting the strict limitation of discovery in criminal cases found in Fed.R.Crim.P. 16.' " *United States v. Cherry,* 876 F.Supp. 547, 552 (S.D.N.Y. 1995) (quoting *United States v. Cuthbertson,* 630 F.2d 139, 146 (3d Cir.1980)). Rule 17(c)(2) provides: "On motion made promptly, the court may quash or modify the subpoena if compliance would be unreasonable or oppressive." In order to clear Rule 17(c)(2)'s "unreasonable or oppressive" hurdle, the Supreme Court requires the subpoenaing party to show: "(1) that the documents are evidentiary and relevant; (2) that [the documents] are not otherwise procurable reasonably in advance of trial by exercise of due diligence; (3) that [it] cannot properly prepare for trial without such production and inspection in advance of trial and that the failure to obtain such inspection may tend unreasonably to delay the trial; and (4) that the application is made in good faith and is not intended as a general fishing expedition". *United States v. Nixon,* 418 U.S. 683, 699–700, 94 S.Ct. 3090, 41 L.Ed.2d 1039 (1974) (footnote and internal quotations omitted). Therefore, a party seeking production of documents under Rule 17(c) must demonstrate that the materials sought are: (1) relevant; (2) admissible; and, (3) specifically identified. *See id.* Under these standards, the court, having reviewed the government's and third parties' motions to quash, including copies of the subpoenas, finds that defendants have failed to satisfy the requirements for the production of the requested documents under Rule 17(c).

## II. The Government's Motions to Quash

The government filed its motions to quash five subpoenas on April 17, 2003.[2] The government argues that the subpoenas are over-broad because the documents they request bear no reasonable relationship to the charges contained within the Indictment.

### A. Subpoena Directed to Patricia Senecal/Watervliet Arsenal

 The Indictment twice references the Watervliet Arsenal. Each reference addresses asbestos abatement work performed by AAR in the Fall of 1995 with some payments extending into early 1996. The Indictment alleges that AAR performed such work with respect to the Commander's Quarters section of the Watervliet Arsenal. The Watervliet Arsenal was built in 1813, and the Commander's Quarters were built in 1842. *See* Dkt. No. 135, Mot. to Quash Subpoena at 4. The subpoena, however, requests voluminous original documents, such as documents reflecting violations of any federal, state, or local law and documents reflecting all asbestos related activities, for the *entire* Watervliet Arsenal without imposing any time limitations. The government assures the court that it made available all documentation related to the charged asbestos abatement project over one year ago. *See id.* The materials demanded by defendants' subpoena far exceed the scope of the conduct charged in the Indictment. As such, the court finds that the subpoena directed to Patricia Senecal is unreasonable, oppressive, and over-broad.

### B. Subpoenas Directed to the Watervliet Arsenal Custodian of Records, Thomas Friedman, and Edward Kucskar

The three subpoenas directed toward the Watervliet Arsenal's Custodian of Records, Thomas Friedman and Edward Kucskar, respectively, seek a broad range of documents dating from 1990 through April 8, 2003. Again, this time frame far exceeds the conduct charged by the Indictment: the Fall of 1995 through 1996. Moreover, the subpoenas seek information pertaining to individuals and companies unrelated to the charges contained within the Indictment. *See* Dkt. No. 136, Supp. Mem. in Supp. of Mot. to Quash at 1–2. Here, defendants' subpoenas fail to meet relevancy requirements, and the court finds that the three subpoenas are unreasonable, oppressive, and over-broad.

### C. Subpoena Directed to Veterans' Administration Hospital, Albany, New York Custodian of Records

The subpoena directed to the Veterans' Administration Hospital's Custodian of Records demands production of more than ten years' worth of records despite the fact that the Veterans' Administration hospital is not listed in the Indictment. *See* Dkt. No. 137, Second Supp. Mem. in Supp. of Mot. to Quash at 1. In addition, "the subpoena demands records related to asbestos abatement activities performed by numerous companies that have nothing whatsoever to do with this case." *Id.* The subpoena requests records pertaining to materials

---

**2.** Regarding the government's motion to quash the Senecal subpoena, although defendants served the subpoena on March 12, 2003, and the government did not move to quash until April 17, 2003, the court finds the government's motion prompt on the record before it. In the intervening weeks, the government attempted to resolve this matter, without the court's intervention, through correspondence, personal meetings and telephone calls. The government requested that defendants withdraw and redraft their subpoena. Defendants, however, did not withdraw their subpoena.

far beyond the scope of the Indictment: lead and hazardous materials. Defendants have failed to show that all of the documents requested are relevant. The court finds that defendants' subpoena is unreasonable, oppressive, and over-broad.

### III. SEA's Motion to Quash

Defendants' subpoena directed to SEA requested production of: all documents relating to asbestos abatement services or projects for forty separate firms; all documents for any asbestos-related project involving incident reports; all documents pertaining to non-compliance with any federal, state, or local law; all documents relating to asbestos-related services; and, all documents related to twenty-eight other firms and persons purportedly involved in asbestos related projects. *See* SEA's Mem. of Law in Supp. of Mot. to Quash at 3.

Since 1996, SEA has provided environmental consulting services, including asbestos air monitoring, for asbestos abatement projects. *See* Massmann Aff. at ¶ 2. SEA is a small business without an administrative staff. Its president performs all office management functions, including sales, marketing, invoicing, collections, bookkeeping, accounting, payroll, and human resources. *See id.* at ¶ 6.

■ SEA protests that compliance with the subpoena would require it to copy virtually every piece of paper in its offices and off-site storage location. SEA conservatively estimates that compliance with the subpoena would produce over forty "banker boxes" of responsive documents. *See id.* at ¶ 5. Moreover, SEA notes that out of the thousands of documents requested by the subpoena, only a few bear any relation to the Indictment: SEA's only involvement with defendants pertains to the St. Mary's Church Rectory project detailed in ¶¶ 180–83 of the Indictment. Defendants have failed to show that all of the documents requested are relevant to the conduct charged in the Indictment. The court finds that defendants' subpoena is unreasonable, oppressive, and over-broad.

### IV. The City's Motions to Quash

#### A. Subpoena Directed to the Custodian of Records for the City

■ Defendants' subpoena directed to the City's Custodian of Records demands production of documents dating from January 1990 through the present reflecting all violations of any federal, state, or local laws regulating construction, maintenance, renovation, management and/or demolition for the entire City. In addition, the subpoena seeks documents relating to any claims, actions, suits, or proceedings of any kind against the City or any person performing services for the City from January 1990 through the present. *See* the City's Mot. to Quash at 4. The City argues that it is not a victim of the conduct underlying the charges contained within the Indictment: "while the defendants may have performed work in [the City] during the time frame covered by the [I]ndictment, the projects that defendants worked on for [the City] are not at issue in the subject [I]ndictment." *See* the City's Mot. to Quash at 3. The City also argues that the requested documentation is neither evidentiary nor relevant to the Indictment and that compliance would cause it to needlessly expend "a significant amount of time, effort and money." *See* the City's Mot. to Quash at 2–3. Defendants have failed to show that all of the documents requested are relevant to the conduct charged in the Indictment. The court finds defendants' subpoena unreasonable, oppressive, and over-broad.

#### B. Subpoena Directed to Charles Williams

Defendants' subpoena directed to Charles Williams demands that he produce

the same documents as those requested of the City. The City argues that Mr. Williams lacks personal knowledge regarding a majority of the projects on which defendants worked.[3] The City submits, on information and belief, that Mr. Williams' name is simply the contact name that AAR Contractors and Analytical Laboratories of Albany, Inc. have on file for the City of Albany. Again, defendants have failed to show that all of the documents requested are relevant to the conduct charged in the Indictment. The court finds defendants' subpoena unreasonable, oppressive, and over-broad.

## CONCLUSION

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED**, that the government's motions to quash defendants' subpoenas directed at (1) Patricia Senecal; (2) the Custodian of Records for the Watervliet Arsenal; (3) Thomas Friedman; (4) Edward Kucskar; and, (5) the Custodian of Records at the Veterans' Administration Hospital, Albany, New York are GRANTED. It is further

**ORDERED**, that SEA's motion to quash defendants' subpoena directed at the Custodian of Records, Spectrum Environmental is GRANTED. It is further

**ORDERED**, that the City's motion to quash defendants' subpoenas directed to the (1) City's Custodian of Records and (2) Charles Williams is GRANTED. It is further

**ORDERED**, that any party or non-party seeking to quash any other subpoenas at issue in this action file such motion(s) with the court no later than one week prior

to trial, scheduled to commence Monday June 9, 2003. It is further

**ORDERED**, that the Clerk of the Court serve a copy of this Memorandum—Decision and Order upon the parties by regular mail.

**IT IS SO ORDERED.**

---

**3.** The City asserts that Mr. Williams is but a technician with its Engineering Department and emphasizes that he is not and never was the City's Engineer. *See* the City's Mot. to Quash at 3.