IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 94-50082

_____


UNITED STATES OF AMERICA,

                                        Plaintiff-Appellant,

                        versus

JAMES SCOTT MANN, III, PETER K. GALLAHER,
WILLIAM M. MOORE, JULIAN C. ALSUP, and
CHARLES CHRISTENSEN,

                                        Defendants-Appellees.

_____

Appeal from the United States District Court for the
Western District of Texas

_____

August 3, 1995

Before VAN GRAAFEILAND,* JOLLY, and WIENER, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:

    The district court dismissed the indictment in this case because, after several delays in bringing the case to trial, the government failed to comply with the district court's order to disclose documents.  The government had allowed the defendants access to the documents upon a non-copying condition, but withdrew access when they discovered that the defendants were copying the documents.  We hold that the documents were privileged against disclosure under Fed. R. Crim. P. 16(a)(2), and although the

_____

    *Circuit Judge of the Second Circuit, sitting by designation.

government may have conditionally waived its privilege, the defendants breached the agreement. The government, therefore, had the right to reassert its privilege against disclosure. Thus, because the government properly exercised its privilege against disclosure under Rule 16(a)(2), the district court abused its discretion when it dismissed the indictment. Consequently, we reverse the district court's dismissal of the indictment, and remand the case.

I

This case has its genesis in the 1980s, during which time the defendants were involved in a series of allegedly fraudulent transactions regarding the sale of a Texas savings and loan institution and the exchange of certain parcels of real estate. The main focus of this appeal and our attention today, however, is on the pretrial investigation and the discovery that began shortly before most of the defendants were initially indicted in September 1991, and continued until shortly before the district court's dismissal of the third superseding indictment in January 1994. We now turn to examine the events shaping this controversy in greater detail.

This case has involved a series of indictments, dismissals, and reindictments, which evidence the complex nature of the case against the defendants, and which contributed to the frustration of the district court. In September 1991, the grand jury returned a twelve-count indictment charging Peter K. Gallaher, William M.

Moore, Charles M. Christensen, and Julian C. Alsup[1] with filing false corporate tax returns in violation of 26 U.S.C. § 7206(1),(2) from 1984 through 1990.  The district court set trial for April 20, 1992.  The following January, the case was reassigned to the Honorable Sam Sparks.  In response to motions for continuance by defendants Alsup and Christensen and in anticipation of a superseding indictment, the district court set trial for July 6, 1992.  As anticipated, the grand jury returned a superseding indictment in April that added appellee J. Scott Mann to the case and included additional charges of fraud and conspiracy in connection with a failed savings and loan association, in violation of 18 U.S.C. § 371.  After three parties moved for a continuance, the district court rescheduled the trial for August 17, 1992.  On August 5, however, the government dismissed the superseding indictment.  At that time, the grand jury returned a new indictment, which contained only three counts and charged only Mann with tax-related offenses.[2]  Mann's trial on these charges was subsequently set for November 1992, with the Honorable James R. Nowlin presiding.  On October 22, Mann's case was reassigned to

---

[1]The case against Alsup was severed by the district court on the same day in January 1994 that the court dismissed the final superseding indictment against the other parties.  Alsup, therefore, is not a party to this appeal.

[2]Mann was charged with violations of 26 U.S.C. § 7206(1) (false corporate tax return), 26 U.S.C. § 7203 (failure to file a corporate tax return), and 26 U.S.C. § 7206(1) (false personal income tax return).

Judge Sparks. At a hearing on November 5, Judge Sparks allowed Mann to substitute his counsel and was informed by the government that it was seeking another superseding indictment. Subsequently, the court granted Mann's motion for a continuance, rescheduling the trial for December 21. At a December 11 motions hearing, the government informed the court that it was still working on the superseding indictment. On December 18, Mann's counsel filed a motion for a continuance to allow him more time to examine the evidence. On December 22, the court granted Mann's motion for continuance, and set the case for trial on March 1, 1993. On February 24, 1993, the district court filed an amended order, rescheduling the trial for March 29, 1993. At docket call on March 1, the government told the court that it was still pursuing a superseding indictment, expected by July. On March 11, the district court entered an order rescheduling Mann's trial for July 5 because his counsel needed additional time to prepare his defense. On June 30, the grand jury issued the thirty-nine count superseding indictment that is the subject of this appeal.[3] After

---

[3]The indictment charged all the defendants, Gallaher, Moore, Alsup, Christensen, and Mann with thirty-nine counts based upon the following code violations: (1) 18 U.S.C. § 371 (conspiracy to defraud a savings and loan, the Federal Home Loan Bank Board, and the Internal Revenue Service); (2) 18 U.S.C. § 1006 (false entries in savings books); (3) 18 U.S.C. § 1014 (false statements to banks); (4) 26 U.S.C. § 7206 (false tax returns); (5) 18 U.S.C. § 657 (misapplication of savings funds); (6) 18 U.S.C. § 1006 (fraudulent participation in savings transactions); (7) 18 U.S.C. § 215(a) (receipt of commission for procuring loan); and (8) 26 U.S.C. § 7203 (willful failure to file tax return).

a discovery motion hearing on September 24, 1993, the court set the trial date as January 4, 1994.

In the meantime, plea negotiations were ongoing. Before the first indictment had issued in September 1991, the government had met with the defendants and their attorneys on several occasions to discuss the case. As a part of these discussions, the government had allowed the defendants to inspect portions of government agents' reports[4] that included assessments of the strength of the case, and that were otherwise not discoverable under Rule 16(a)(2). In addition to the exposure of these documents, Agent Mazur copied approximately 150 pages of his report, termed the "evidence" or "factual" section and placed it on file with the government's other evidence to which the defendants were given access in order to allow the defendants to better understand the cases against them. Apparently, a portion of Agent Brooks's report was also deposited with the government's evidence, composed of hundreds of volumes of materials.

Although the record does not contain a formal agreement governing access to these documents and the agents' reports, the record reflects that early in the discovery process certain "rules of engagement" were established. The district court was aware of these rules because on several occasions the government referenced these informal rules in its pleadings and correspondence. For

---

[4]These were the reports of the Internal Revenue Service's Special Agents Walter Mazur and Howard Brooks.

instance, in its January 24, 1992 Response to Pretrial Motions

Filed by Defendant William Moore, the government stated that it had

> agreed to informally provide all discovery to which
> Defendant Moore is entitled pursuant to the Federal Rules
> of Criminal Procedure and the laws and Constitution of
> the United States.  Further, the government has
> informally agreed to provide discovery of materials to
> which Defendant Moore is not entitled under the above
> cited authorities.

Supplemental Record on Appeal, Vol. I, at 103.  In its January 24,

1992 Response to Pretrial Motions Filed by Defendant Peter

Gallaher, the government states that "[i]t is the policy of the

prosecutor assigned to this case to facilitate discovery whenever

possible.  To that end, counsel for Mr. Gallaher . . . has been

allowed to examine the Special Agent's report prepared by Walter

Mazur of the Internal Revenue Service."  <u>Id.</u> at 105.

In other pleadings, the government was more specific as to the

parameters of the rules, using the same language to describe access

to the materials on two different occasions:

> [t]he government will voluntarily allow all
> defendants in this cause to examine and copy evidence
> which the government has accumulated during its
> investigation.  The only exceptions are items submitted
> to the government with a reservation of the attorney-
> client privilege.  Counsel for the defendants may examine
> the government's files at the Federal Building, 300 East
> 8th Street, Austin, Texas.  The files are in the custody
> of Walter Mazur, Special Agent, Internal Revenue Service,
> Criminal Investigation Division. . . . A copier is
> available to the defendants' attorneys.  A fee of 10
> cents per page will be charged.
>     The government has previously allowed attorneys to
> examine Agent Mazur's report.  The government will
> continue to allow counsel to <u>review</u> the factual portion
> of the report, but the report <u>may not be copied and must</u>

> remain on government premises at 300 East Eighth Street, Austin, Texas.

May 13, 1992 Response to Pre-Trial Motions Filed by Defendants Mann and Gallaher, Supplemental Record on Appeal, Vol. II, at 274-75 (emphasis added); June 9, 1992 Response to Pre-Trial Motions Filed by Defendant Christensen, Supplemental Record on Appeal, Vol. II, at 421-22 (emphasis added).  Moreover, early in the discovery process, the government orally told the court that it was giving the defendants restricted access to portions of the special agents' reports.  In a June 10, 1992 pretrial motion hearing, the government stated that

> we have given the attorneys access to Mr. Mazur's investigative reports. . . . We intend to give the attorneys access throughout [the discovery process] to the factual portions of that report.  Now there's some theory and that sort of thing in there that we are going to hold back, but the factual portions that will lead them into the evidence, that the government has accumulated, will remain open to them.

Record on Appeal, Vol. V at 12 (emphasis added).

As the record reflects, the defendants were allowed to examine the evidence portion of the investigative reports, but specifically were prohibited from copying these reports.  Up to July 1992, the defendants had access to these investigative reports, as well as documentary evidence in the basement of the federal government building in Austin, Texas.  On July 6, however, the government discovered a representative of one of the defendants hand-copying verbatim from the evidence portion of one of the reports, in direct contravention to the informal rules of access established for the

documents. This act prompted the government to deny access to the agents' reports to all defendants in the case.[5] The government, nevertheless, continued to offer access to the other documents involved in the case. Apparently, the defendants did not raise an immediate objection to this denial of access.

On August 4, 1992, the indictment under which this discovery had been proceeding was voluntarily dismissed by the government. A superseding indictment against only Mann was issued in mid-August[6] so that Gallaher, Moore, Alsup, and Christensen, at that point, were no longer involved in discovery. The government allowed Mann to have access to government documents, but withheld access to the special agents' reports. The record does not reflect that Mann expressed any objection to this denial of access.

On June 30, 1993, almost one year later, the government obtained the superseding indictment that is at issue in this case. See Note 3 supra. In connection with this indictment, the government continued to practice the open discovery policy it had previously employed with these defendants. The government agent

---

[5]The government, however, made an exception to this rule for Gallaher's substituted counsel, whom the court had appointed on July 30, 1993, to replace previous counsel. Because the counsel came into the case late, the government gave him access to the special agents' reports on several occasions so that he could understand the nature of the government's case. The government also made clear to him that it would not allow the reports to be copied.

[6]See Note 2 supra.

reports, however, were not among the documents to which the defendants were given access.

On October 5, 1993, over one year after access to the government agents' reports was curtailed, appellee Moore filed a motion for discovery, inspection, and copying of exculpatory evidence, in an effort to obtain the investigative reports. Moore contended that the government had waived any privilege by disclosing the reports during earlier plea negotiations. After a hearing on November 19, the district court found that the government, "by appropriately cooperating with defense counsel in the discovery process, has allowed the defendants' counsel to inspect the notebook and therefore has waived any work product privilege." Thus, the district court granted Moore's motion on November 24 and ordered the government to present the reports for an <u>in camera</u> inspection so that the court could determine what parts of the agents' reports, if any, could be redacted pursuant to a protective order. When the government tendered the reports to the court on December 10 for the inspection, it asked the court to reconsider its disclosure order, reminding the court that Fed. R. Crim. P. 16(a)(2) specifically makes these reports undiscoverable. On December 17, the court held another hearing and orally denied the government's motion for reconsideration. As a result, the court again ordered the government to disclose the agents' reports because the previous disclosures had been inconsistent with the government's work product privilege, even though the government had

argued that these documents were exempt from disclosure under Rule 16(a)(2).  The court then scheduled an evidentiary hearing for December 28 to determine which documents had been disclosed.  After this hearing, rather than consider the alternative of holding the government in contempt, the district court entered an order on December 29 requiring the government to produce the reports, having stated in the hearing that even if there were rules governing access to the documents, the government had waived any privilege it had to the documents.  <u>See</u> Record at Vol. XII, p. 97.  The court also warned that it would dismiss the indictment if the government did not comply with its order.  The government did not comply, and the court dismissed the indictment on January 3, 1994.  This appeal followed.

II

The parties raise three issues on appeal.  All of the appellees, except Gallaher, first contend that this court is without jurisdiction to hear this appeal.  The government, as appellant, presents two contentions:  first, it contends that the district court erred in ordering the government to provide the defendants with copies of the special agents' reports that were exempt from pretrial discovery under Fed. R. Crim. P. 16(a)(2); second,  it argues that the district court abused its discretion in dismissing the indictment based on the government's refusal to provide copies of the agents' reports to the defendants.

We will address each issue in turn.

III

A

We first must address the defendants' argument that this court does not have appellate jurisdiction over this matter. This argument plainly lacks merit. This appeal is authorized by 18 U.S.C. § 3731, which permits the government to appeal from "an order of a district court dismissing an indictment," providing, however, "no appeal shall lie where the double jeopardy clause of the United States Constitution prohibits further prosecution." The defendants argue that the double jeopardy clause prohibits this appeal. The defendants concede, as they must, that jeopardy has not attached because a jury has not yet been empaneled and sworn. See United States v. Juarez-Fierro, 935 F.2d 672, 675 (5th Cir. 1991). They cite no authority in support of their argument, but urge this court to adopt a functional approach to double jeopardy analysis. As stated above, this argument has no merit. Accordingly, because the government's appeal is authorized by § 3731, we have appellate jurisdiction.

B

Now let us determine whether the district court erred when it ordered the government to produce documents in question. We review the district court's actions in this discovery setting for an abuse of discretion. United States v. Sarcinelli, 667 F.2d 5 (5th Cir. 1982).

We begin with an examination of the plain language of Rule 16(a)(2). Under the heading, "Information Not Subject to Disclosure," Rule 16(a)(2) states that, with exceptions not relevant here, "this rule does not authorize the discovery or inspection of reports, memoranda, or other internal government documents made by the attorney for the government or <u>other government agents</u> in connection with the investigation or prosecution of the case." (Emphasis added). As an internal government document produced by government agents in connection with the investigation of this case, the reports at issue clearly fall within the ambit of this rule, and thus are exempted from discovery.

The Advisory Committee Notes cast more light on the purpose of the rule. The 1974 Amendment Notes state that the phrase "reports, memoranda, or other internal government documents made by the attorney for the government" was meant to incorporate the "work product" language of <u>Hickman v. Taylor</u>, 329 U.S. 495 (1947), into the rule to ensure that government attorneys' litigation preparations are protected from discovery. The Notes, however, say nothing about the work product privilege, as it is understood in <u>Hickman</u>, being made applicable to the internal government documents produced by other government agents.

The defendants argue that <u>United States v. Nobles</u>, 422 U.S. 225 (1975), made the work product privilege fully applicable to criminal cases, and, thus, its waiver rules apply here. It is true

that the work product privilege does apply in criminal cases. We disagree, however, with the defendants' characterization of the extent to which Nobles expands this privilege to cover documents made expressly nondiscoverable in Rule 16(a)(2). Nobles was concerned only with the defendant's work product. The scope of pre-trial discoverability of internal government documents, as set forth in Rule 16, was not at issue. Put another way, Nobles, which was not concerned with Rule 16(a)(2), cannot be read to alter the plain language of a rule it did not address. We should further observe that at the time of the Nobles decision, the work product language that the defendants assert to support their argument had not yet been incorporated into Rule 16(a)(2). In short, we do not think that Nobles expands the attorney work product privilege to other government agent internal reports, such as those contemplated in Rule 16(a)(2).

Although we decline to extend the rules of the waiver of attorney work product privilege to the context of the case before us, we find that the general rules regarding waiver are applicable. See United States v. Mezzanatto, 115 S.Ct. 797, 801-02 (1995)(The provisions of the Federal Rules of Criminal Procedure are "presumptively waivable" by a voluntary agreement of the parties.). "A waiver is a voluntary and intentional relinquishment of a known right or conduct that warrants an inference of such a relinquishment." Highlands Ins. Co. v. Allstate Ins. Co., 688 F.2d 398, 404 (5th Cir. 1982); see also Birdwell v. Skeen, 983 F.2d

1332, 1340 (5th Cir. 1993). Rule 16(a)(2) clearly exempts certain types of government materials from discovery, with the reports at issue being among them. The defendants argue that when the government allowed them to inspect the agents' reports, it waived the privilege against disclosure. The district court agreed and found that notwithstanding the establishment of any conditions governing the access to the special agents' reports, the government waived the privilege of nondiscoverability upon once disclosing the reports to the defendants. After looking at the general principles of waiver and the government's conduct in this proceeding, we conclude that the district court erred.

From the very first, the government put certain conditions on the defendants' access to these reports. During plea negotiations in 1991, the government attorneys and special agents were present when the defendants and their attorneys reviewed the reports. Furthermore, the defendants were only given access to a portion of the reports. Although other documents were allowed to be copied, with the government even providing a copying machine, the government made clear that these reports, which are indeed protected by Rule 16(a)(2), could not be copied.[7] Moreover, along

---

[7]The defendants argue that the government's rules governing the copying of the reports are ambiguous. They assert that the rules are susceptible to an interpretation allowing hand-copying, but disallowing photocopying. We reject this argument out of hand. The plain language of the correspondence from the government disallows "copying," which would include any manner of reproduction.

with other documents, the government controlled the access to the reports and would not allow the parties to transport them from government facilities. From the start, the defendants agreed to the terms of this restrictive arrangement. So long as the defendants complied, the government permitted access. Only when the government discovered one of the parties hand-copying, verbatim, from the reports did it withdraw the restricted access to these reports that it had granted earlier. In the light of these facts, we conclude that, even assuming the government's conduct satisfies the principles of waiver generally, the government did not waive its Rule 16(a)(2) privilege absolutely. Instead, it waived the rule's protections conditionally; that is, the government agreed to suspend Rule 16(a)(2) so long as the defendants did not copy the privileged materials. When this condition was breached, however, the obligation of the government terminated, the parties returned to the status quo ante, and the government was, therefore, free to reassert its Rule 16(a)(2) privilege against disclosure.

Although this particular question of waiver has seldom been addressed, courts that have been confronted with a Rule 16(a)(2) question have read the rule to prohibit forced disclosure of this type of government work product. See United States v. Lov-It Creamery, Inc., 704 F.Supp. 1532 (E.D. Wisc. 1989); see also United States v. Williams, 998 F.2d 258, 268 n.23 (5th Cir. 1993)("[Rule 16(a)(2)] specifically provides that `internal' memoranda and

reports prepared by the government in the preparation of its case are not discoverable."). Furthermore, other courts have recognized the binding power of these informal discovery agreements. See United States v. Cole, 857 F.2d 971, 976 (4th Cir. 1988). Other cases have held that although the government allowed defendants to view certain documents covered by Rule 16(a)(2), or a similar state rule, no waiver of the privilege against disclosure occurred. See United States v. Penix, 516 F.Supp. 248 (W.D. Okla. 1981); Indiana ex rel. Keaton v. Circuit Court of Rush County, 475 N.E. 2d 1146 (Ind. 1985).

C

Finally, in the light of our opinion above, the district court's error in dismissal of the indictment is now self-evident, considering our conclusion that the government did not waive absolutely its Rule 16(a)(2) privilege against nondisclosure. Because we hold that the government acted within its Rule 16(a)(2) protections, the court was without the power to impose the extreme penalty of dismissal of the indictment. Consequently, the district court abused its discretion, and the order of dismissal must be reversed.

IV

To sum up, we hold that we have jurisdiction to entertain this appeal. Furthermore, we hold that the government properly asserted its privilege against disclosure under Rule 16(a)(2). Thus, the district court abused its discretion when it ordered a dismissal of

the indictment.[8]  For the foregoing reasons, the district court's order dismissing the indictment is

REVERSED and REMANDED.

---

[8]When the district court dismissed the indictment, it also noted that the government had engaged in other unjustifiable delay. The court further indicated that this background of additional delay had influenced its decision to dismiss the indictment. It is nevertheless clear, however, that only the added factor of the government's refusal to disclose moved the judge actually to dismiss the indictment. No record was made that would allow us to review the court's finding of fault against the government for other delays encountered during the case. Thus, the only issue we decide in this appeal is that the district court erred by dismissing the indictment based on the government's failure to disclose the agents' reports. This opinion does not affect the right of the district court to reconsider on remand any other alleged misconduct on the part of the government and, if justified, to take appropriate action.