GRABER, Circuit Judge.
The federal criminal prosecution of Defendants Emile Fort, Edgar Diaz, and Robert Calloway for racketeering and various predicate crimes is pending trial. Defendants are alleged to be members of the “Down Below Gang,” a San Francisco-based street gang operating in the Sunny-dale Public Housing Project. They stand accused of engaging in an illegal enterprise of individuals associated in fact, who dealt drugs, committed robberies, and assaulted and killed those they believed were cooperating with the police. The witnesses who are expected to testify for the United States are primarily residents of the housing project, and the district court has found “that the government has made a substantial showing of danger to inculpato-ry witnesses.”
The United States brings this interlocutory appeal to challenge a discovery order issued by the district court (“June 16 Order”). The June 16 Order ruled that police reports created by San Francisco police officers prior to the federal prosecution of Defendants do not qualify for the discovery exception created by Federal Rule of Criminal Procedure 16(a)(2), even though those investigative reports are in the hands of the federal prosecutor for the purpose of pursuing charges against Defendants under the Federal Racketeer Influenced and Corrupt Organizations Act (“RICO”), 18 U.S.C. §§ 1961-1968. The government refused to comply with the discovery order, and the district court sanctioned the noncompliance. On appeal, the government seeks review of the sanction and of the district court’s underlying decision regarding the scope of Rule 16(a)(2). Defendants Fort and Diaz cross-appeal the sanction order and seek additional sanctions against the government.
We hold that the documents in dispute are not discoverable because they are covered by Federal Rule of Criminal Procedure 16(a)(2) whether prepared by federal, state, or local officials. Accordingly, we vacate the June 16 Order and do not reach the merits of the government’s challenge to the sanction imposed. We do not have jurisdiction over Defendants’ cross-appeal.
In addition, the government petitions for a writ of mandamus to reverse a separate *1108 order (“August 26 Order”) of the district court. The August 26 Order requires the government to produce a list of witnesses to Defendants 21 days before trial, pursuant to 18 U.S.C. § 3432. The government submitted a notice of noncompliance to the district court but has not yet violated the order nor been sanctioned. For the reasons that we explain below, we remand the August 26 Order without ruling on the mandamus petition.
FACTUAL AND PROCEDURAL BACKGROUND
A grand jury returned an 86-count second superseding indictment charging Defendants Fort, Diaz, Calloway, and several other people with racketeering crimes that include predicate acts involving drugs, firearms, murder, and attempted murder. In the course of discovery, the district court issued a number of orders compelling the government to turn over witness information to the defendants. Defendants Fort, Diaz, and Calloway are the only three defendants who are involved in this appeal.
A. Rule 16 Orders
The first set of orders at issue here relates to inculpatory police reports created by the San Francisco Police Department prior to the initiation of the federal prosecution of Defendants. The government disclosed many thousands of pages of these reports to Defendants during discovery but redacted all witness names and locator information.
The district court issued a series of orders relating to the discoverability of the police reports. The first order, dated May 18, 2006, held that all investigative reports created by the San Francisco police that are “in the possession, custody or control” of the United States Attorney’s Office are “documents” subject to discovery within the meaning of Federal Rule of Criminal Procedure 16(a)(1)(E). It further held that a report is exempt from discovery under the provisions of Rule 16(a)(2) “only if the report was prepared in connection with investigating or prosecuting the subject case by police officers having a relationship to the federal prosecutors substantially equivalent to that of federal investigative agents.” The court invited the government to demonstrate that the reports were so prepared. The government made no such showing.
The district court finalized its discovery ruling with regard to the police reports in its June 16 Order. It held that “all of the local police reports related to this case in the possession of the United States Attorney’s Office are producible under Rule 16 and are not within the work-product exemption to Rule 16(a)(2).” The district court also made two alternative rulings relating to waiver. First, it held that any Rule 16(a)(2) protection that may have attached to the police reports was waived by the government when it voluntarily and intentionally produced portions of the reports to Defendants. Second, it held that the government further waived any Rule 16 protection with regard to a number of the police reports by allowing a witness for the government who is an expert on gang crimes to rely on the reports in forming his conclusions. The June 16 Order directed the government to allow Defendants access to the information redacted from the police reports pursuant to the terms of an accompanying Protective Order for Witness Security (“Protective Order”) and memorandum opinion, also issued on June 16, 2006.
The district court devised the Protective Order without the government’s cooperation. In its related memorandum opinion, the court found that the government had made a substantial showing of serious physical danger to inculpatory witnesses. In its view, the terms of the Protective Order would improve, rather than impede, the witnesses’ security. The Protective *1109 Order contained extensive regulation of the discovery and use of protected information.
The government promptly filed a notice of noncompliance with regard to the Protective Order. The district court issued a sanction order on July 20, 2006, that precludes the government from using against Defendants the testimony of any inculpato-ry civilian witness whose name was redacted from discoverable materials, unless the government demonstrates that the refusal to allow access was substantially harmless.
The government appealed both the Rule 16 ruling and July 20, 2006, sanction order. Defendants Fort and Diaz filed a cross-appeal challenging the sanction order, arguing that the district court should, additionally, preclude the government from seeking the death penalty against them.
B. 18 U.S.C. § 8182 Order
Before making its Rule 16 determination, the district court had issued a separate discovery order on August 26, 2005, requiring the government to disclose its witness list 21 days before trial, pursuant to 18 U.S.C. § 3432. The government submitted a notice of noncompliance to the court. The government petitions for mandamus, seeking reversal of the § 3432 discovery order. The government filed its mandamus petition more than 21 days before the date on which the trial is scheduled to commence, so at the time of the filing the government had not yet violated the discovery order and the court had not yet imposed any sanction.
STANDARD OF REVIEW
We review de novo a district court’s interpretation of the Federal Rules of Criminal Procedure. United States v. Navarro Viayra, 365 F.3d 790, 793 (9th Cir.2004). We also review de novo questions of waiver. Feldman v. Allstate Ins. Co., 322 F.3d 660, 665 (9th Cir.2003).
DISCUSSION
A. Jurisdiction
As a preliminary matter, Defendants argue that we lack jurisdiction to review the district court’s interpretation of the scope of Rule 16. Defendants assert that, because the government appealed the July 20, 2006, sanction order, the “collateral bar” rule precludes us from reviewing the district court’s underlying substantive ruling contained in the June 16 Order. That argument is foreclosed by our precedent, which permits an appeal on the merits in this situation. See United States v. Fernandez, 231 F.3d 1240, 1245 (9th Cir.2000) (“For while discovery orders themselves are not generally ‘final’ for purposes of section 1291, parties who face such an order have the option of making the decision ‘final’ simply by refusing to comply, and appealing the resulting sanction.” (citation and internal quotation marks omitted)). We turn, therefore, to the merits of the government’s appeal.
B. Rule 16
This appeal presents the question whether investigative reports prepared by a local police department prior to a federal prosecutor’s involvement qualify for the discovery exemption created by Rule 16(a)(2) when they are turned over to the federal prosecutor for use in the federal investigation and prosecution of the same acts by the same people.[1] From the out *1110 set, it is important to note that this appeal does not involve the government’s disclosure obligations under Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), or other disclosure rules. The identifying information here pertains to in-culpatory, not exculpatory, evidence, and nothing in this opinion should be interpreted to diminish or dilute the government’s Brady obligations. We review only the district court’s determination that local police reports do not qualify for the Rule 16(a)(2) exemption and that they are, therefore, discoverable materials under Rule 16(a)(1)(E). This is an issue of first impression for our court. No constitutional or statutory provisions control the outcome, so we must begin by reviewing the text of Rule 16. See United States v. John Doe, Inc., 481 U.S. 102, 109, 107 S.Ct. 1656, 95 L.Ed.2d 94 (1987) (stating that an appellate court must look first to the plain meaning of the text when interpreting a Federal Rule of Criminal Procedure).
1. Text of the Rule
Rule 16(a)(1)(E) sets out the types of information that the government must disclose to defendants during discovery:
Upon a defendant’s request, the government must permit the defendant to inspect and to copy or photograph ... documents ... if the item is within the government’s possession, custody, or control and:
(I) the item is material to preparing the defense;
(ii) the government intends to use the item in its case-in-chief at trial; or
(iii) the item was obtained from or belongs to the defendant.
(Emphasis added.) Rule 16(a)(2) limits the scope of discoverable materials:[2]
Except as Rule 16(a)(1) provides otherwise, this rule does not authorize the discovery or inspection of reports, mem-oranda, or other internal government documents made by an attorney for the government or other government agent in connection with investigating or prosecuting the case. Nor does this rule authorize the discovery or inspection of statements made by prospective government witnesses except as provided in 18 U.S.C. § 3500.
(Emphasis added.)
It is undisputed that the written police reports at issue here are “documents” within the “possession, custody, or control” of the federal prosecutor and that they are “material to preparing the defense.” Thus, the reports are discoverable under Rule 16(a)(1)(E) unless exempted by Rule 16(a)(2). We must decide whether the reports were “made by an ... other government agent in connection with investigating or prosecuting the case.” This inquiry requires us, in turn, to determine what is meant by “government agent” and “the case.”
*1111 a. “Government agent ”
The Rules do not define the phrase “other government agent.” Although the constituent term “government” is not explicitly defined, it is used as shorthand for “federal government” throughout the Rules.[3] In accordance with that construction, Rule 1(b)(1) defines restrictively the term “attorney for the government” to mean (as relevant here) a federal prosecutor.[4]
Even though “government” means “federal government” in Rule 16(a)(2), we are still left to determine who qualifies as an “agent” of the federal government in the context of the discovery process in a federal criminal prosecution. Defendants urge us to limit the concept of “government agent” to those individuals who were employed directly by the federal government or who were acting at the federal prosecutor’s direction at the time that they drafted a report. In contrast, the government urges that the term “government agent” be given a broader definition that would include state or local police officers whose investigation of a defendant provides evidence to support a federal prosecution of the same defendant for the activities so investigated. Both readings are plausible, so we must look more deeply.
It is a general rule of statutory construction that “identical words used in different parts of the same act are intended to have the same meaning.” Gustafson v. Alloyd Co., 513 U.S. 561, 570, 115 S.Ct. 1061, 131 L.Ed.2d 1 (1995) (internal quotation marks omitted). Accordingly, we first examine the other parts of Rule 16 for guidance. Rule 16(a)(1)(A) and (B) both refer to a “government agent.” Rule 16(a)(1)(A) provides:
Upon a defendant’s request, the government must disclose to the defendant the substance of any relevant oral statement made by the defendant, before or after arrest, in response to interrogation by a person the defendant knew was a government agent if the government intends to use the statement at trial.
(Emphasis added.)[5] As is true of Rule 16(a)(2), the term “government agent” is *1112 not specifically defined in Rule 16(a)(1)(A). But Rule 16(a)(1)(A) has been read to require federal prosecutors to disclose statements made by defendants to local law enforcement officers so long as such statements are in the federal prosecutor’s possession at the time of trial. See United States v. Mitchell, 613 F.2d 779, 781 (10th Cir.1980) (holding that Rule 16(a)(l)(A)’s disclosure requirement applies to a statement made by the defendant to a state probation officer); see also United States v. Rinn, 586 F.2d 113, 120 (9th Cir.1978) (analyzing under Rule 16(a)(1)(A) the government’s failure to disclose the defendant’s statement to an undercover state police officer and holding that there was no violation, but only because the defendant’s statement was not in response to “interrogation”); United States v. Cooper, 800 F.2d 412, 416 (4th Cir.1986) (same, with regard to the defendant’s incriminating statements to a D.C. corrections officer); United States v. Brazel, 102 F.3d 1120, 1150 (11th Cir.1997) (holding that the government did not violate Rule 16(a)(1)(A) by failing to disclose the defendant’s state-court guilty pleas before trial, where it disclosed them as soon as it gained possession). We have found no contradictory construction of Rule 16(a)(1)(B).
The government’s proposed reading of “government agent” is consistent, then, with decisions implementing the same phrase in Rule 16(a)(1)(A). Even so, Defendant’s narrower construction is still plausible. Therefore, we look beyond Rule 16 for additional insight.
Few of the Rules address the kind of potential cooperation between federal and non-federal players raised in this appeal, so they offer little guidance in interpreting Rule 16’s use of the term “government agent.” See supra note 2. Federal Rule of Criminal Procedure 6 is one of the few Rules, other than Rule 16, that pertains to potential cooperation among federal, state, and local law enforcement. The commentary to Rule 6 assists us in understanding the Advisory Committee’s general concerns for a practical, cooperative approach.
Rule 6 governs federal grand jury proceedings. In establishing exceptions to the general rule of secrecy for grand jury proceedings, Rule 6(e)(3) allows disclosure to “any government personnel — including those of a state, state subdivision, Indian tribe, or foreign government — that an attorney for the government considers necessary to assist in performing that attorney’s duty to enforce criminal law.” Fed. R.Crim.P. 6(e)(3)(A)(ii) (emphasis added). Thus, “government personnel” is defined expressly to incorporate not only federal authorities, but also employees of non-federal government entities that are engaged in assisting federal criminal law enforcement. In explaining the rationale for this expansive definition, the Advisory Committee described concerns equally apropos to Rule 16:
It is clearly desirable that federal and state authorities cooperate, as they often *1113 do, in organized crime and racketeering investigations, in public corruption and major fraud cases, and in various other situations where federal and state criminal jurisdictions overlap. Because of such cooperation, government attorneys in complex grand jury investigations frequently find it necessary to enlist the help of a team of government agents. While the agents are usually federal personnel, it is not uncommon in certain types of investigations that federal prosecutors wish to obtain the assistance of state law enforcement personnel, which could be uniquely beneficial. The amendment permits disclosure to those personnel in the circumstances stated.
Fed.R.Crim.P. 6(e)(3)(A)(ii) (1985 amendments) advisory committee’s note.
Although the Advisory Committee has not amended Rule 16 to include a similar (or, indeed, any) express definition of “government agent,” Rule 16 has not been subject to the type of conflict among district courts that prompted the Advisory Committee to amend Rule 6.[6] The practical and policy considerations are parallel. We thus find it more reasonable that, read in context, “government agent” includes non-federal personnel whose work contributes to a federal criminal “case.”
b. “The case ”
Defendants argue that, even if “government agent” is read to include local law enforcement officers, the police reports at issue here do not fall within the scope of Rule 16(a)(2) because they were prepared before the federal prosecutor initiated “the case.” In other words, Defendants argue that, for the purposes of Rule 16(a)(2), a “case” does not begin until a federal prosecutor becomes involved. Again, the government urges a more expansive reading of the term that includes the investigative work done before a federal prosecutor takes on a federal prosecution, if the investigative work concerns a particular defendant and the particular conduct for which he is federally prosecuted.
Defendants assert that the Supreme Court and our court have already addressed this question and have defined “the case” in the limited manner that Defendants propose. To the contrary, the ambiguity of this term remains. Indeed, the opinions that Defendants cite actually weigh in favor of the government’s proposed definition.
In United States v. Armstrong, 517 U.S. 456, 116 S.Ct. 1480, 134 L.Ed.2d 687 (1996), the Supreme Court considered whether Rule 16 entitled the defendant to discovery for the purpose of gathering materials in support of a proposed counterclaim of selective prosecution against the federal prosecutors. The defendant sought a list of the racial identities of all defendants prosecuted federally for possession of drugs and firearms during a three-year period. Id. at 459, 116 S.Ct. 1480. The Court held that a “defense” to which the documents must be material means only “an argument in response to the prosecution’s case in chief’ and, thus, did not include separate counterclaims such as selective prosecution. Id. at 462, 116 S.Ct. 1480. In arriving at that conclusion, the Court stated that the term *1114 “case,” as used in Rule 16(a)(2), does not extend to prosecutions against other people. Id.
The logic of Armstrong cuts against Defendants’ proposed interpretation of “case.” In Armstrong, the key question in determining the scope of a “case” under Rule 16(a)(2) was whether it involves the same defendant and the same crime. When state or local officials conduct an investigation that ultimately leads to a federal (instead of a state) prosecution against the same defendant for the very activities investigated, Armstrong suggests that there is but one “case” against the defendant within the meaning of Rule 16. This concept is particularly applicable in RICO prosecutions where state crimes can be charged as predicate acts to establish a “pattern of racketeering activity.” 18 U.S.C. § 1961(1) & (5).
Similarly, in United States v. Cedano-Arellano, 332 F.3d 568 (9th Cir.2003) (per curiam), we interpreted Rule 16(a)(2) to apply only to documents generated with a view toward the prosecution of a defendant. In Cedano-Arellano, the defendant sought access to the training records of the narcotics-sniffing dog that had alerted police to drugs in the gas tank of the defendant’s vehicle. Id. at 570. We held that Rule 16(a)(2) did not except the training records from discovery because “they were not made in connection with investigating or prosecuting this or any other case.” Id. at 571.
The clearest reading of Cedano-Arella-no supports the conclusion that documents that are “made in connection with investigating or prosecuting this or any other case” against a defendant are exempt from discovery under Rule 16(a)(2). Local police reports that result in a federal investigation or prosecution of the same defendant for the same acts are part of “the case” as so understood.
The continuing ambiguity of Rule 16(a)(2), notwithstanding Armstrong and Cedano-Arellano, is illustrated by the conflicting approaches that district courts have taken in interpreting it. Compare United States v. Cherry, 876 F.Supp. 547, 551-52 (S.D.N.Y.1995) (holding that, where the federal prosecution is a direct outgrowth of an investigation by local authorities, the local investigation and federal prosecution are one “case,” and the local police reports generated prior to federal involvement are exempt from discovery under Rule 16(a)(2)), and United States v. Duncan, 586 F.Supp. 1305, 1313 (W.D.Mich.1984) (denying under Rule 16(a)(2) the defendant’s discovery request for all police reports related to his prosecution), with United States v. DeBacker, 493 F.Supp. 1078, 1082 (W.D.Mich.1980) (holding that, where state police began an investigation prior to federal involvement, police reports were discoverable under Rule 16); and United States v. Green, 144 F.R.D. 631, 641 (W.D.N.Y.1992) (“However, to the extent that the government has in its possession reports or records from state or local law enforcement agencies or prisons, these items are discoverable unless they are the product of a joint investigation or unless they have become the work product of the federal investigators.”).
Because the text of Rule 16(a)(2) remains ambiguous after considering its text and context, we turn to other interpretative aids to help resolve the question before us.
2. Advisory Committee’s Intentions
The Advisory Committee’s explanatory notes do not address the question presented here. We must, therefore, find indirect ways to understand the Committee’s intent. ■
Defendants contend that the drafters intended Rule 16(a)(2) to be a “work prod *1115 uct” exception and, therefore, that we should limit the rule to the contours of the work product privilege codified in Federal Rule of Civil Procedure 26. We are not persuaded that the drafters meant to limit Criminal Rule 16 to the civil “work product” doctrine. Rule 16 itself, while encompassing government work product and having its genesis in the idea of work product, draws its boundaries more broadly than those of Civil Rule 26.[7]
It is true that Rule 16(a)(2) is often referred to as a “work product” rule. See, e.g., Fed.R.Crim.P. 16 (1975 enactment) advisory committee’s note D (“Rules 16(a)(2) and (b)(2) define certain types of materials (‘work product’) not to be discoverable.”); Armstrong, 517 U.S. at 468, 116 S.Ct. 1480 (stating that “under Rule 16(a)(2), [the defendant] may not examine Government work product in connection with his case”); United States v. Fernandez, 231 F.3d 1240, 1247 (9th Cir.2000) (“Additionally, Rule 16[ (a)(2) ] of the Federal Rules of Criminal Procedure recognizes the work product privilege and exempts from production ‘reports, memo-randa, or other internal government documents made by the attorney for the government or any other government agent investigating or prosecuting the case.’ ”).
At the same time, it is clear that Rule 16(a)(2)’s protection of investigative materials extends beyond the work product privilege as defined in the civil context. Although the Advisory Committee used the term “work product” to describe the materials discoverable under Rule 16(a)(2), it purposefully defined the Rule’s scope differently than that of Rule 26. See Fed. R.Crim.P. 16 (1975 enactment) advisory committee’s note D.
As note D states, in 1975 the House of Representatives proposed to limit the materials covered by Criminal Rule 16(a)(2) to accord with Civil Rule 26. Specifically, the House sought to exempt only “the mental impressions, conclusions, opinions, or legal theories of the attorney for the government or other government agents.” Id. The Committee rejected that proposal and maintained the more expansive scope that includes all “reports, memoranda, or other internal government documents.” Id.; see also In re Grand Jury Subpoenas, 318 F.3d 379, 383 (2d Cir.2003) (noting that Rule 16 imposes a stricter limit to discovery in criminal matters than Rule 26 imposes in civil litigation).
The Fifth Circuit in United States v. Mann, 61 F.3d 326 (5th Cir.1995), also has cautioned that Rule 16 is not coextensive with the work product privilege, despite their interrelatedness. The Mann court expressly rejected the contention, raised by the defendants there (and by Defen *1116 dants here), that the Supreme Court equated the two in United States v. Nobles, 422 U.S. 225, 95 S.Ct. 2160, 45 L.Ed.2d 141 (1975). Mann, 61 F.3d at 331.
Although Rule 16 was an issue in Nobles, the Court addressed the work product doctrine separately from Rule 16 and did not equate them. 422 U.S. at 234-40, 95 S.Ct. 2160. The Court’s comments regarding the work product doctrine are instructive in pointing to a practical interpretation:
At its core, the work-product doctrine shelters the mental processes of the attorney, providing a privileged area within which he can analyze and prepare his client’s case. But the doctrine is an intensely practical one, grounded in the realities of litigation in our adversary system. One of those realities is that attorneys often must rely on the assistance of investigators and other agents in the compilation of materials in preparation for trial. It is therefore necessary that the doctrine protect material prepared by agents for the attorney as well as those prepared by the attorney himself.
Id. at 238-39, 95 S.Ct. 2160.
Mann’s distinction between the work product doctrine and Rule 16(a)(2) is further illustrated by the differing treatment of investigative reports. Under the work product doctrine, police reports are rarely protected. See, e.g., Miller v. Pancucci, 141 F.R.D. 292, 303 (C.D.Cal.1992); 6 James Wm. Moore et ah, Moore’s Federal Practice § 26.70(c)(iii) (2006). But police reports (at least those created by federal law enforcement officers) plainly are protected under Rule 16(a)(2). United States v. Jordan, 316 F.3d 1215, 1227 n. 17 (11th Cir.2003). Thus, again, we can see that Rule 16 is not just a work product rule.
Rather, the drafters intended Rule 16(a)(2) to be a rule of discovery, related to the work product doctrine but not synonymous or coextensive with it. Therefore, we must go beyond the work product doctrine to determine the scope of Rule 16(a)(2).
3. Symmetry of Obligations
Rule 16 does not stand in isolation as the sole source of discovery obligations placed on parties to criminal litigation. Instead, Rule 16 acts in concert with other statutory and common law obligations.
a. The Jencks Act
The text of Rule 16(a)(2) delimits its own scope by reference to the Jencks Act: “Nor does this rule authorize the discovery or inspection of statements made by prospective government witnesses except as provided in 18 U.S.C. § 3500.” The best clue that we have as to what the Advisory Committee that drafted Rule 16 intended regarding the scope of Rule 16(a)(2)’s exception is its reference in its committee note to two Jencks Act-related cases, Palermo v. United States, 360 U.S. 343, 79 S.Ct. 1217, 3 L.Ed.2d 1287 (1959); and Ogden v. United States, 303 F.2d 724 (9th Cir.1962).[8]
The Jencks Act requires the government to disclose to criminal defendants any statement made by a government witness that is “in the possession of the United States ” once that witness has testified. 18 U.S.C. § 3500(a) & (b) (emphasis added).[9] The Act, in its current form, does not *1117 distinguish between statements obtained by federal officials and statements obtained by state or local officials. Rather, the text of the statute requires that the government disclose all witness statements, regardless whether state obtained or federally obtained, so long as the statements are in the actual possession of the federal government at the time of the trial. See Palermo, 360 U.S. 343, 79 S.Ct. 1217, 3 L.Ed.2d 1287 (describing Jencks Act disclosure requirements and making no distinction based on affiliation of official obtaining the statement); Ogden, 303 F.2d 724 (same).[10]
In cases relating to the Jencks Act, the key question posed by most courts is that of possession. For example, in United States v. Higginbotham, 539 F.2d 17 (9th Cir.1976), we addressed a defendant’s request that the federal prosecutors produce photographs that the state police had included in a photo array used to obtain witness identifications of the defendant. We held that the defendants did not have the right to production because the federal prosecutor never had possession of the photos. Id. at 21. We analogized the case to a Jencks Act request:
[T]he demand to produce these photographs might well be likened to an attempt to require production under the Jencks Act of statements in the possession of state police. See Beavers v. United States, 351 F.2d 507 (9th Cir.1965), where the statements were never in possession of the United States and production was not required.
Id.; see also United States v. Weaver, 267 F.3d 231, 245 (3d Cir.2001) (noting, in dictum, that “the Jencks Act only applies to evidence in the possession of the United States, and not state authorities”); United States v. Harris, 368 F.Supp. 697, 709 (E.D.Pa.1973) (finding no Jencks Act violation because, “[njotwithstanding the cooperative law enforcement effort of the Federal and state authorities, the fact of the *1118 matter is that the reports in question were compiled by the city police officers, submitted as a matter of course to their superiors in the police department, and are now (and were at the time of trial) in the lawful possession and control of the Philadelphia Police Department”). We think that the drafters intended the same inquiry to be made here.
b. Rule 16(a)(1)(E)
Our case law supports a symmetrical reading of Rule 16’s discovery obligations. In United States v. Gatto, 763 F.2d 1040 (9th Cir.1985), we examined the scope of the prosecution’s duty to disclose evidence to the defendants under Rule 16(a)(1)(E).[11] Specifically, we were asked whether evidence found and held by state authorities until the eve of trial was discoverable to defendants under Rule 16(a)(1)(E). We focused on physical possession as the dis-positive factor. Gatto, 763 F.2d at 1046-49. We held that the evidence became discoverable only when the state authorities placed it in the hands of the federal authorities, because “the triggering requirement under rule 16[ (a)(1)(E) ] is that the papers, documents, and tangible objects be in the actual possession, custody or control of the government.”[12] Id. at 1049.
Gatto’s emphasis on possession as the triggering requirement for Rule 16 accords with decisions by this and other circuits. See, e.g., United States v. Friedman, 593 F.2d 109, 119-20 (9th Cir.1979) (holding that neither Rule 16 nor the Jencks Act required the production of a document held by a foreign government, because the federal prosecutor did not have possession of it); United States v. Adkins, 741 F.2d 744, 747 (5th Cir.1984) (holding that Rule 16(a)(l)(E)’s predecessor “requirefs] the government only to turn over those records actually in its possession”).[13]
Under Gatto, state-gathered evidence becomes subject to the disclosure obligation established by Rule 16(a)(1)(E) when it passes into federal possession. We believe that Rule 16(a)(2) is best read to create symmetry between the disclosure obligation and the exception to that obligation. Rule 16(a)(2) is, after all, an exception to the disgorgement requirement of Rule 16(a)(1)(E), which depends on the document’s being “within the government’s possession, custody, or control.” In the context of this appeal, then, investigative reports created by state police officers and turned over to federal prosecutors to support a unified federal prosecution of defendants should be considered reports “made by an ... other government agent in connection with investigating or prosecuting the case.”
c. Form 302s
In addition to establishing symmetry between the government’s Jencks Act obli *1119 gations and those imposed by Rule 16, the government’s proposed reading of Rule 16(a)(2) creates symmetry between the treatment of like investigative reports created by investigating officers. Rule 16(a)(2) exempts reports created by FBI agents (Form 302s) from disclosure. Jordan, 316 F.3d at 1227 n. 17.
Under Defendants’ limited reading of the Rule, parallel investigative reports created by state or local police officers would be treated differently for the purpose of discovery. The similar reports would be treated differently even if they were created in order to support a prosecution, turned over to federal prosecutors, and used by federal prosecutors in the preparation of a case. That asymmetry is illogical. Symmetry is particularly compelling when evidence of state crimes such as drug dealing, robbery, and murder are predicate acts under RICO to establish a “pattern of racketeering activity” in violation of federal law. 18 U.S.C. § 1961.
4. Policy Considerations
Finally, to determine the intent of the drafters of Rule 16(a)(2), we examine policy considerations. In Cherry, the District Court for the Southern District of New York addressed squarely the issue before us. It noted:
This federal prosecution is a direct outgrowth of investigations by local authorities. Those investigations covered the same conduct by the same defendants charged in the federal indictment. For all practical purposes, including the application of Rule 16(a)(2), this local investigation and federal prosecution should be considered one “case.” To hold otherwise, thereby making underlying local or state investigatory files subject to pre-trial discovery by a subsequently federally indicted defendant, would in all likelihood inhibit cooperation between local and federal law enforcement agencies, to the benefit of criminals but to the detriment of the public good.
876 F.Supp. at 551-52 (footnotes omitted). Those concerns are echoed here.
The present case involves the federal prosecution of Defendants for, in part, gang activities in violation of RICO, 18 U.S.C. §§ 1961-1968. A number of the predicate acts on which the RICO charge is based are state law crimes, including various counts of murder and attempted murder. It is precisely this type of case in which cooperation between state and federal law enforcement is most crucial. As we explained above, the Advisory Committee signaled the importance and desirability of federal-state cooperation when it explained changes to Criminal Rule 6. Here, San Francisco police officers investigated Defendants’ illegal conduct and then turned the results of their investigation over to federal authorities, allowing their work to be subsumed within a single, unified prosecution of Defendants by the federal authorities.[14]
In conclusion, we hold that Rule 16(a)(2) extends to the San Francisco police re *1120 ports created prior to federal involvement but relinquished to federal prosecutors to support a unified prosecution of Defendants for the same criminal activity that was the subject of the local investigation. It is an overstatement by the dissent to suggest that our opinion expands the scope of documents covered by Rule 16 and the Jencks Act. We here address witness statements to be used in a federal criminal prosecution but initially given to San Francisco police officers along with the officers’ case reports revealing the identities of the witnesses and summarizing their statements. These types of documents have always been protected under federal law if compiled by federal officers. Our opinion recognizes no principled reason why the law should be any different in a federal prosecution regardless of who gathered the statements.[15]
C. Waiver
Notwithstanding its ruling that the police reports were discoverable under Rule 16, the district court held, in the alternative, that the government had waived any potential Rule 16(a)(2) protection of the documents by turning over redacted copies of the reports to Defendants. Applying the principles of the work product privilege, the court held: “Disclosure of privileged material waives the privilege as to all material on the same subject.”
As we stated above, Rule 16(a)(2) is not, strictly speaking, a work product privilege. It is, rather, a broader rule of discovery. Therefore, we look for guidance to the general principles of waiver. Waiver is the “intentional or voluntary relinquishment of a known right.” Black’s Law Dictionary 1580 (6th ed.1990). It can be either express or implied. Id.
The Fifth Circuit’s discussion in Mann analyzes a situation similar to the one we consider here. In Mann, the government had allowed the defendants access to documents protected by Rule 16(a)(2) through an express agreement between the parties that the defendants would not copy the materials. 61 F.3d at 329. The defendants broke the no-copying agreement, and the government rescinded access. Id. The defendants challenged — on the basis of waiver — the validity of the government’s change of heart. They argued “waiver” as it applies to the work product privilege and cited Nobles in support. Id. at 331. The Mann court held, first, that Rule 16(a)(2) and the work product privilege are not synonymous and that Nobles did not make them so:
Nobles, which was not concerned with Rule 16(a)(2), cannot be read to alter the plain language of a rule it did not address .... In short, we do not think that Nobles expands the attorney work product privilege to other government agent internal reports, such as those contemplated in Rule 16(a)(2).
Id. Applying general principles of waiver, the Fifth Circuit held that the government did not waive its Rule 16(a)(2) protection by allowing the defendants to have conditional access to the protected documents. Id. at 332.
Although the facts before us differ from those of Mann in certain respects, we reach the same result. Here, the government did not execute an express disclosure agreement. But it has clearly and consi- *1121 tently articulated its intention to preserve the confidentiality of inculpatory-witness identifications. It carried through on that intention with regard to the police reports by systematically redacting all witness locator information, while permitting Defendants access to the substantive information contained within the reports. The government’s consistent and systematic retention of control over witness-identifying information demonstrates that it did not intentionally or voluntarily relinquish its rights under Rule 16(a)(2) to hold back this information from discovery.
We hold that the government’s disclosure of redacted copies of local police reports, where the redactions were consistent and supported by an articulated intention to protect witness identities in the context of a case in which the district court has already found a serious risk of harm to witnesses, does not constitute a waiver of the documents’ Rule 16(a)(2) protection.

D.Expert Use

The district court also held, in the alternative, that the government had waived any potential Rule 16(a)(2) protection by allowing one of its gang-crimes experts to rely on the protected materials in developing his opinions. The government concedes that materials on which a proposed expert witness relies must be produced to Defendants in discovery, and we agree. The government disputes, however, that the expert relied on the police reports at issue here. This is a question of fact that we remand to the district court for it to determine.
E. Sanction Appeal
Because we reverse the district court’s June 16 discovery order, we also reverse its July 20, 2006, sanction order. Consequently, we need not reach the government’s challenge to the sanction imposed by the district court.
F. Cross-Appeal
We do not have jurisdiction over Defendant’s cross-appeal of the July 20, 2006, sanction order. See United States v. Eccles, 850 F.2d 1357, 1361 (9th Cir.1988) (“[A] defendant may not cross-appeal from an interlocutory appeal under [18 U.S.C. § ] 3731.”).
G. Petition for Mandamus
Finally, we turn to the government’s petition for mandamus, which challenges the district court’s August 26, 2005, order requiring the government to produce a list of witnesses 21 days before trial, pursuant to 18 U.S.C. § 3432.[16] Given our ruling regarding the government’s discovery obligations under Rule 16 and the effect that this ruling will have on the overall management of discovery in this case, and given the fact that the time for compliance has not yet arrived, we decline to reach the merits of the government’s petition for mandamus at this time and, instead, remand all discovery issues to the district court for reconsideration.
CONCLUSION
The cross-appeal filed by Defendants Fort and Diaz (No. 06-10478) is Dis *1122 MISSED. The following orders issued by the district court are VACATED:
1. May 18, 2006 — Order re Discovera-bility of Local Police Reports Under Rule 16 and Schedule for Further Submissions, Doc. # 367;
2. June 16, 2006 — Concluding Order re Local Police Reports and Rule 16 Discovery, Doc. # 472; and
3. July 20, 2006 — Testimony Preclusion Order as Sanction for Non-Compliance with Rule 16 Orders, Doc. #578.
All matters relating to the discovery of materials pursuant to Rule 16 are REMANDED to the district court for reconsideration in the light of this opinion.

. The dissent vigorously pursues a ghost when it attacks as illogical the government’s witness-protection motive for pursuing this appeal. Dissent at 1122-23, 1130-31. We do not rely on the government's motive or on witness protection to interpret Rule 16(a)(2). Our interpretation of Rule 16(a)(2) applies regardless of the content of the non-disclosed inculpatory information and regardless of the *1110 potential effect of disclosure on witness safety-

. In United States v. Rudolph, 224 F.R.D. 503 (N.D.Ala.2004), the district court addressed whether Rule 16(a)(2) provides an exception to the discovery requirements of Rule 16(a)(1)(E). Because Rule 16(a)(2) begins with the general statement, "Except as Rule 16(a)(1) provides otherwise,” the court wrote that a plain reading of the text would lead to the conclusion that all materials meeting the parameters of Rule 16(a)(1)(E) must be produced. After a survey of the history of the rule’s purpose and structural amendments, however, the court concluded that this conflict resulted from a "scrivener's error" and was not intended by the Advisory Committee or by Congress. Id. at 507. Neither party raises that issue here. But, for the purpose of clarity, we observe that the Rudolph court’s analysis is persuasive, and we adhere to its reading of Rule 16(a)(2) as an exception to the discovery requirements of Rule 16(a)(1)(E).

.See, e.g., Rule 7(f) ("The court may direct the government to file a bill of particulars.”); Rule 9(a) ("The court must issue a warrant— or at the government's request, a summons— for each defendant named in an indictment or named in an information if one or more affidavits accompanying the information establish probable cause....”); Rule 11(a)(2) ("With the consent of the court and the government, a defendant may enter a conditional plea of guilty or nolo contendere....”); Rule 12(b)(4) (entitled "Notice of the Government's Intent to Use Evidence”); Rule 12(h) ("At a suppression hearing, a law enforcement officer is considered a government witness.”); Rule 12.1(b) (requiring attorney for the government to disclose information for "each witness the government intends to rely on to establish the defendant's presence at the scene” and "each government rebuttal witness to the defendant's alibi defense”); Rule 12.2(c)(3) (referring to the “government’s examination” of the defendant's mental competency in context of insanity defense); see also Rules 5(c)(3)(D)(I), 5.1(a)(3) & (4), 5.1(f), 12.3(a)(4), 12.4(a)(2), 14(a), 14(b), 15(d), 17(b), 18, 23(a)(2), 24(b)(1) & (2), 26.3, 28, 29(a), 29.1, 31(b)(3), 32.1(a)(5)(B)(I), 32.2(a), 32.2(b)(1) & (4), 32.2(e)(1) & (2), 35(b), 41(a)(2)(C), 42(a)(2), 46(f)(3)(A) & (C), 48(a).

. Rule 1(b)(1) provides:
"Attorney for the government” means:
(A) the Attorney General or an authorized assistant;
(B) a United States attorney or an authorized assistant;
(C) when applicable to cases arising under Guam law, the Guam Attorney General or other person whom Guam law authorizes to act in the matter; and
(D) any other attorney authorized by law to conduct proceedings under these rules as a prosecutor.

. Rule 16(a)(1)(B) provides:
*1112 Upon a defendant’s request, the government must disclose to the defendant ... all of the following:
(i)any relevant written or recorded statement by the defendant if:
• the statement is within the government’s possession, custody, or control; and
• the attorney for the government knows — or through due diligence could know — that the statement exists;
(ii) the portion of any written record containing the substance of any relevant oral statement made before or after arrest if the defendant made the statement in response to interrogation by a person the defendant knew was a government agent; and
(iii) the defendant’s recorded testimony before a grand jury relating to the charged offense.
(Emphasis added.)

. See Rule 6(e)(3)(A)(ii) (1985 amendments) advisory committee’s note (noting that definition of "government personnel” was intended to clarify the rule in light of the conflict among the courts). In contrast, to date no circuit court has addressed directly the issue presented in this appeal, and very few district courts have done so. See United. States v. Cherry, 876 F.Supp. 547, 551 (S.D.N.Y.1995); United States v. Green, 144 F.R.D. 631, 641 (W.D.N.Y.1992); United States v. Duncan, 586 F.Supp. 1305, 1313 (W.D.Mich.1984); United States v. DeBacker, 493 F.Supp. 1078, 1082 (W.D.Mich.1980). We discuss the holdings of those cases in the text below at pp. 1114-16, 1119.

. Rule 26(b)(3) states in relevant part:
Subject to the provisions of subdivision (b)(4) of this rule, a party may obtain discovery of documents and tangible things otherwise discoverable under subdivision (b)(1) of this rule and prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative (including the other party’s attorney, consultant, surety, indemnitor, insurer, or agent) only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the party’s case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means. In ordering discovery of such materials when the required showing has been made, the court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation.
By contrast, Rule 16(a)(2) states in relevant part:
Except as Rule 16(a)(1) provides otherwise, this rule does not authorize the discovery or inspection of reports, memoranda, or other internal government documents made by an attorney for the government or other government agent in connection with investigating or prosecuting the case.

. "Reports, memoranda, and other internal government documents made by government agents in connection with the investigation or prosecution of the case are exempt from discovery. Cf. [Palermo and Ogden].” Fed. R.Crim.P. 16(b)(2) (1966 amendment) advisory committee note. (Rule 16(a)(2) was numbered as (b)(2) at the time the committee wrote its note.)

. The Jencks Act provides, in pertinent part:
*1117 (a) In any criminal prosecution brought by the United States, no statement or report in the possession of the United States which was made by a Government witness or prospective Government witness (other than the defendant) shall be the subject of subpoena, discovery, or inspection until said witness has testified on direct examination in the trial of the case.
(b) After a witness called by the United States has testified on direct examination, the court shall, on motion of the defendant, order the United States to produce any statement (as hereinafter defined) of the witness in the possession of the United States which relates to the subject matter as to which the witness has testified. If the entire contents of any such statement relate to the subject matter of the testimony of the witness, the court shall order it to be delivered directly to the defendant for his examination and use.
(e) The term "statement,” as used in subsections (b), (c), and (d) of this section in relation to any witness called by the United States, means—
(1) a written statement made by said witness and signed or otherwise adopted or approved by him;
(2) a stenographic, mechanical, electrical, or other recording, or a transcription thereof, which is a substantially verbatim recital of an oral statement made by said witness and recorded contemporaneously with the making of such oral statement; or
(3) a statement, however taken or recorded, or a transcription thereof, if any, made by said witness to a grand jury.
18 U.S.C. § 3500 (emphasis added).

. Circuit courts that have addressed cases involving state-gathered statements have come to differing conclusions regarding the Jencks Act obligations. Compare United States v. Heath, 580 F.2d 1011, 1018-19 (10th Cir.1978) (holding that the federal prosecutor violated the Jencks Act by failing to disclose state-obtained witness statements), with United States v. Smith, 433 F.2d 1266, 1269 (5th Cir.1970) (holding that a statement made by a government witness to a state police officer was not subject to the Jencks Act).

. At the time of Gatto, that provision was numbered 16(a)(1)(C). Rule 16 was renumbered in 2002.

. We expressly avoided deciding whether "government” included the FBI agents investigating the case, or whether it was limited to the federal prosecutor. Gatto, 763 F.2d at 1047.

. We note our accord with the Second Circuit's cautionary statement in In re Jury Subpoenas, 318 F.3d 379, 384-85 (2d Cir.2003), that the protection established by Rule 16(a)(2) does not extend to "discovery materials in an attorney's possession that were prepared neither by the attorney nor his agents ... [but, rather, by] a third party in the ordinary course of business and that would have been created in essentially similar form irrespective of any litigation anticipated by counsel.” (Citation omitted.) In that case, the documents in question were bank records. Here, we address reports created by local police officers for the purpose of recording evidence of Defendants’ illegal conduct to support a prosecution of Defendants for that conduct.

. If the roles were reversed, and FBI officials conducted an investigation, the results of which they delivered to a district attorney for prosecution under state law, the federal rules of procedure would not apply and those reports would be subject to the discovery rules of the state. See, e.g., People v. Santorelli, 95 N.Y.2d 412, 718 N.Y.S.2d 696, 741 N.E.2d 493, 497-98 (2000) (holding that district attorney did not violate Brady obligations by failing to turn over FBI 302s because the reports were not in the actual possession of the district attorney, the federal authorities refused to allow the district attorney access to the reports, and the trial court made a finding that the federal and state investigators acted independently). Again, our interpretation of Rule 16 preserves symmetry, as we believe the drafters intended.

. Also, contrary to the dissent’s assertion, dissent at 1130, we do not hold that "virtually all documents” that happen to fall into the hands of the federal prosecutor qualify for Rule 16(a)(2)’s discovery exemption. Although federal possession is necessary in order to qualify for the Rule 16(a)(2) exemption, it is not sufficient. A document also must be an internal (nonpublic) document made by an "other government agent in connection with investigating or prosecuting the case.” Rule 16(a)(2).

. Title 18 U.S.C. § 3432 provides:
A person charged with treason or other capital offense shall at least three entire days before commencement of trial be furnished with a copy of the indictment ... and of the witnesses to be produced on the trial for proving the indictment, stating the place of abode of each ... witness, except that such list of the ... witnesses need not be furnished if the court finds by a preponderance of the evidence that providing the list may jeopardize the life or safety of any person.